**NATIONAL TREASURY EMPLOYEES UNION, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 85–1351.

United States Court of Appeals, District of Columbia Circuit.

Argued April 8, 1986.

Decided May 23, 1986.

As Amended May 23, 1986.

William Harness, Atlanta, Ga., with whom Lois G. Williams, Washington, D.C., was on the brief, for petitioner.

Pamela P. Johnson, Atty., Federal Labor Relations Authority, with whom Ruth E. Peters, Sol., Steven H. Svartz, Deputy Sol., and William E. Persina, Associate Solicitor, Federal Labor Relations Authority, were on the brief, Washington, D.C., for respondent.

Glenn L. Archer, Jr., Asst. Atty. Gen., and Michael L. Paup, Atty., Dept. of Jus-

tice, Washington, D.C., were on the brief, for amicus curiae, I.R.S., urging affirmance.

Before MIKVA, GINSBURG and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

This case involves an unfair labor practice charge filed by the National Treasury Employees Union (NTEU or union) against the Internal Revenue Service (IRS). The union alleged that the IRS interfered with its employees' exercise of protected activities by disciplining two union members for disclosing confidential taxpayer information to their union lawyers in the course of preparation for a grievance proceeding. The Federal Labor Relations Authority (FLRA or Authority) found that the disclosure violated the Internal Revenue Code and IRS regulations because the employees had failed to obtain the necessary authorization from IRS officials. The Authority therefore held that the IRS had not committed an unfair labor practice by disciplining the employees.

We agree with the FLRA and the IRS that the Code prohibits the disclosure of taxpayer information for personnel purposes except when specific permission is granted by the Secretary of the Treasury or his designee. Under the unique circumstances of this case, however, we conclude that the two employees in question lacked fair notice that their action was prohibited; we therefore hold that it was an unfair labor practice for the IRS to discipline them. Accordingly, we reverse the order of the FLRA and remand the case to that agency for determination of appropriate remedial measures.

I.

Section 6103(a) of the Internal Revenue Code states the general rule that "[r]eturns and return information shall be confidential, and except as authorized by this title— (1) no officer or employee of the United States ... shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee...." 26 U.S.C. § 6103(a) (1982). This general ban on disclosure provides essential protection for the taxpayer; it guarantees that the sometimes sensitive or otherwise personal information in a return will be guarded from persons not directly engaged in processing or inspecting the return for tax administration purposes. The assurance of privacy secured by § 6103 is fundamental to a tax system that relies upon self-reporting.

Absolute confidentiality, however, is neither attainable nor desirable. Competing concerns, as the large number of exceptions enumerated in § 6103 attests, impel some compromise of the taxpayer's privacy. One such concern is the maintenance of fair and stable labor relations within federal agencies. If a union is to fulfill its duty to represent federal employees, it must have access to agency records for bargaining and grievance resolution purposes.[1] The Code provides for such access in § 6103($l$)(4)(A), which is captioned "Disclosure of returns and return information for use in personnel or claimant representative matters." This subsection authorizes the Secretary of the Treasury to disclose return information "upon written request —(i) to an employee or former employee of the Department of the Treasury, or to the duly authorized legal representative of such employee ..., who is or may be a party to any administrative action or proceeding affecting the personnel rights of such employee...." The IRS has specified the authorization procedure under

---

1. Indicative of this need, § 7114(b) of the Federal Service Labor-Management Relations Act provides that the agency's duty to negotiate in good faith includes "the obligation—... to furnish to the [union] involved, or its authorized repre- sentative, upon request and, to the extent not prohibited by law, data—(A) which is normally maintained by the agency in the regular course of business...." 5 U.S.C. § 7114(b) (1982).

§ 6103(*l*)(4)(A) and allowed only certain upper level officers to act as the Secretary's designees in dispensing permission to disclose. *See* IRS Delegation Order 156 (Rev. 2), para. 1(e) (Mar. 21, 1982) (identifying Secretary's designees), *reprinted in* Brief for the Internal Revenue Service as Amicus Curiae at app.

The two employees whose reprimand gave rise to this case, Robert Bates and Robert Moore, are veteran Revenue Officers in the Wichita District in Kansas City, Kansas. Each has been employed by the IRS for more than sixteen years. Bates was the president of NTEU Chapter 51 and Moore was a union steward. Both men worked under the supervision of Collection Group Manager Glenn Schreiber.

In November 1982, Schreiber began to collect negative documentation of Bates' work performance. Bates, who believed that his workload was excessive, taking into account his union responsibilities, asked Moore to help him pursue a grievance concerning the documentation. Moore thereupon submitted a memorandum to Schreiber requesting information relevant to the grievance, specifically, copies of the Revenue Officer Dailies [2] for the four officers in Bates' and Moore's unit, including Bates and Moore themselves.

According to testimony credited by the Administrative Law Judge (ALJ), Schreiber examined the request for the Dailies and asked Moore, "You and Bates have your own, right?" Moore replied, "Yeah, we've got our own." Schreiber then said, "Really, the only thing you need from me would be [the other two officers'] dailies." Moore responded, "[T]hat would be fine." *Department of the Treasury IRS*, No. 7–CA–30514, slip op. at 5 (Aug. 10, 1984) [hereinafter cited as ALJ Decision], *reprinted in* J.A. at 62.

Moore learned shortly thereafter that two union lawyers would be coming to Kansas City the following week. When the lawyers arrived, Bates and Moore both gave unsanitized copies of their Dailies to the lawyers to use in preparation for a meeting with the agency. The meeting was attended by Bates, Moore, the two union lawyers, Schreiber, and another IRS official. One of the lawyers quoted some statistics concerning Bates' workload and, when questioned by Schreiber, acknowledged that he had obtained the information from the Dailies. Bates and Moore then confirmed that they had given the lawyers their Dailies and had not removed the confidential taxpayer information from them, although that information was not relevant to preparation of the grievance. *See* ALJ Decision at 7–8, *reprinted in* J.A. at 64–65.

Immediately after the meeting, Schreiber called the Inspection Service to report the disclosure. Within the next few days, Schreiber also wrote to Mr. Portz—the Chief of the Collection Division—and a personnel officer named Merle Simpson notifying them of the disclosure to the lawyers. Both Portz and Simpson sought the guidance of James Manuszak, the disclosure officer, who advised them that the disclosure violated the Code. Portz issued notices of proposed disciplinary suspension of three working days to Bates and Moore. After negotiations with the union and an oral reply hearing, Portz reduced the punishment to an oral admonition, the least severe disciplinary action possible.[3]

 The union filed an unfair labor practice charge, alleging that the IRS had interfered with its employees' protected activity of processing a grievance. The ALJ found that Moore and Bates had violated the Internal Revenue Code and IRS regulations

---

**2.** The "Daily" is a record of how an officer spends work time. It includes the name of each taxpayer for whose case the officer is responsible, and a description of any action taken on the case.

**3.** Although no notice of the disciplinary action was placed in the employees' files, Moore did suffer some repercussions from the event.

Schreiber refused to recommend Moore for a high quality step increase—which Schreiber said he had previously been planning to approve—because of the "poor judgment" Moore showed in disclosing the Dailies to the union lawyers. *See* ALJ Decision at 23, *reprinted in* J.A. at 80.

by disclosing their complete (unsanitized) Dailies to the union lawyers.[4] The judge held that the employees never obtained proper disclosure authorization under § 6103($l$)(4)(A) because Schreiber not only did not intend to give such authorization, he had no power to give it.[5] The ALJ also concluded that Moore and Bates knew, or should have known, that Schreiber, who was only a Group Manager, lacked authority to grant disclosure permission. The imposition of discipline by the IRS, the ALJ thus concluded, was lawful and not an unfair labor practice.[6] The FLRA affirmed, adopting the ALJ's findings and conclusions as its own. *See Department of the Treasury IRS*, 17 F.L.R.A. No. 75 (April 15, 1985).

## II.

Under the Federal Service Labor-Management Relations Act, 5 U.S.C. § 7101 *et seq.* (1982), the FLRA has responsibility for resolving complaints of unfair labor practices by federal agencies or by the unions representing agency employees. *See id.* at § 7105(a)(2)(G). In reviewing an FLRA decision, a court must accept the Authority's findings of fact if they are supported by substantial evidence in the record as a whole, and must affirm the FLRA's order unless it is arbitrary, capricious, an abuse of discretion, or not in accordance with law. *See* 5 U.S.C. § 7123(c); 5 U.S.C. § 706.

■ It is an unfair labor practice for an agency "to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter...." 5 U.S.C. § 7116(a)(1). Among rights guaranteed to employees by the relevant chapter is the option to pursue a union-negotiated grievance procedure. *See id.* at § 7121. If the agency disciplines an employee for actions taken in the course of processing a grievance, and those actions are not, in fact, in violation of the applicable statutes or regulations, then the agency has interfered with the employee's rights and committed an unfair labor practice. The union argues that the IRS engaged in such an unfair labor practice in this case.

The ALJ and the FLRA rejected the union's claim because they found that the employees' action did constitute a violation of the Code and regulations. This violation consisted of the disclosure of confidential taxpayer information to persons not employed by the IRS without the approval of the Secretary or his designee under § 6103($l$)(4)(A). If the agency's "interference" was simply a legitimate disciplinary reaction to a real infraction, then, as the ALJ held, no unfair labor practice was committed.

■ We do not doubt, anymore than the ALJ and the FLRA did, that a disclosure without authorization under § 6103($l$)(4)(A) violates the Code and regulations. Confidentiality of taxpayer information would be undermined if the IRS could not strictly enforce a scheme requiring high level scrutiny of disclosure requests. Moreover, the same privacy considerations that call for

---

**4.** It is worth noting, however, that the IRS itself failed to sanitize much of the information it officially released to the union lawyers pursuant to a later, and admittedly authorized, disclosure. *See* ALJ Decision at 18, *reprinted in* J.A. at 75.

**5.** The ALJ observed that the disclosure was not immunized from the statutory prohibition simply because it occurred in the context of a protected activity: preparing a grievance. Citing FLRA precedent, the ALJ stated that protected activities, like all other activities, must be carried on within the constraints imposed by valid laws and regulations. *See* ALJ Decision at 11–12, *reprinted in* J.A. at 68–69. These are correct, unremarkable statements, and the union does not challenge them on appeal.

**6.** FLRA's General Counsel and NTEU urged before the ALJ that the punishment could constitute an unfair labor practice, even if Bates and Moore improperly disclosed taxpayer information, if the agency had acted not out of legitimate motives but because of anti-union animus. The judge found, however, that neither the lodging of charges against Bates and Moore, nor the discipline "was brought about or motivated in any manner by union animus." *See* ALJ Decision at 22–23, *reprinted in* J.A. at 79–80. NTEU does not contest on appeal the finding that animus against the union was not a critical part of the motivation for the disciplinary action against Bates and Moore.

centralized review of disclosures to non-employees also counsel careful control of disclosures within the IRS. Just as the taxpayer's privacy is impermissibly invaded when the unauthorized recipient of the information is an outsider, so it is invaded unlawfully when an IRS employee obtains the information, without authorization, for purposes other than tax administration.[7] Thus, § 6103(*l*)(4)(A)—as its caption implies[8]—provides the exclusive method of authorization for all disclosures of confidential information in relation to personnel matters, whether the recipient is an employee or an outsider serving the grievant as his "duly authorized legal representative." *Id.*[9]

■ It is beyond question that Bates and Moore lacked proper authorization under § 6103(*l*)(4)(A) for their disclosure to the union lawyers. The permission to use each other's Dailies that they received from Collection Group Manager Schreiber was insufficient because Schreiber's position carried no authority to grant disclosure requests under § 6103(*l*)(4)(A). *See* IRS Delegation Order 156 (Rev. 2), para. 1(e) (Mar. 21, 1982), *reprinted in* Brief for the Internal Revenue Service as Amicus Curiae at app. The type of disclosure that took place here would, therefore, normally be a punishable violation of § 6103.

The unique circumstances of this case, however, convince us that it was unfair to discipline these two employees. The behavior of their supervisor, and the prevalent uncertainty concerning the disclosure procedure applicable in employee grievance matters, lead us to that conclusion. Bates and Moore lacked adequate notice that they had insufficient authorization to disclose to their legal representatives the information Schreiber told them to obtain from each other. Under these highly unusual circumstances, the IRS committed an unfair labor practice by reprimanding these employees.

Bates and Moore were understandably confused by the unexplained and illegal behavior of Schreiber, their supervisor. When the employees made a formal, written request for disclosure of the Dailies—thus correctly initiating the process that should have led to proper authorization under § 6103(*l*)(4)(A)—Schreiber unilaterally truncated the process with respect to Bates' and Moore's own Dailies. He essentially instructed the employees to violate the statute by telling them to disclose their Dailies to each other for a non-tax administration purpose without obtaining proper authorization under § 6103(*l*)(4)(A). Nor was that instruction explicitly limited to disclosures between employees. Schreiber

7. The Code provides for access to returns and return information without written request by officers and employees of the Department of the Treasury "whose official duties require such [access] for tax administration purposes." 26 U.S.C. § 6103(h)(1). This inroad on privacy is both necessary and expected; the very reason for requiring returns and return information from the public is "for purposes of tax administration."

8. *See supra* at 184.

9. The ALJ recognized that a question existed concerning the kind of authorization necessary to release confidential information to *employees* for personnel purposes. The judge declined to decide that question on the ground that it was not necessary to his decision in this case: the disclosure for which these employees were reprimanded was a disclosure to *outsiders*, a disclosure which the ALJ found clearly covered by § 6103(*l*)(4)(A). *See* ALJ Decision at 16 & n. 10, *reprinted in* J.A. at 73 (observing that information available to employees for tax administration purposes "may cease to be for [such] purposes and, therefore, [become] obtainable, even by an employee, only pursuant to 6103(*l*)(4)").

We reach and resolve the issue of intra-employee disclosure because we believe that it is essential to a full understanding of what the disciplined employees in this case could reasonably have been expected to know or to do. For example, if these employees correctly understood the law on personnel-related disclosure to apply equally to disclosures to outsiders and disclosures to employees, there would have been no reason for them to interpret Schreiber's permission as extending to one and not the other. *See infra* at 188. Their supervisor's purported authorization was either invalid as to both types of disclosure or valid as to both. The employees cannot be faulted for failing to distinguish between internal and external disclosures "for use in personnel ... matters" when the relevant provision of the Code makes no such distinction.

gave the employees no reason to think that the proffered permission, which was unlawful in any event, did not include disclosures to nonemployees who were legitimately involved in processing the grievance. In light of their supervisor's explicit statement about all they were "[r]eally ... need[ing]," ALJ Decision at 5, *reprinted in* J.A. at 62, Bates and Moore might reasonably have assumed that they had received the agency approval necessary for disclosure to their "duly authorized [albeit nonemployee] legal representative[s]."

Even if the employees had doubts concerning Schreiber's authority to grant them permission to bypass channels with respect to their own Dailies, it would be unfair to discipline them for not insisting that Schreiber's superiors make the decision. Bates had already aroused Schreiber's displeasure and was not securely positioned to object when Schreiber effectively pared down the written request Moore had prepared. Resistance to Schreiber's suggestion that they resort to their own Dailies without further ado seems all the more unexpectable when a further factor is considered: their supervisor's lack of authority was hardly crystal clear.[10] Indeed, the two higher level officers to whom Schreiber reported the disclosure apparently had doubts about whether any violation had occurred. In order to resolve those doubts, these two officials—the Chief of the Collection Division and a personnel officer—contacted one of the agency's experts on disclosure. Only when the disclosure officer advised them that a violation had occurred did they initiate disciplinary proceedings. Bates and Moore can hardly be faulted for sharing their superiors' confusion and un-

certainty concerning the legality of their disclosure to the lawyers.

### CONCLUSION

The singular circumstances of this case persuade us that it was an unfair labor practice to discipline these two employees. In the midst of prevalent uncertainty concerning the nature of the necessary authorization, Bates and Moore followed their supervisor's bidding and did not persist in requesting their own Dailies through official channels. The IRS, having allowed its supervisor to confuse and mislead the employees, cannot now hold the employees responsible for the disclosure that resulted from their use of the information in processing a grievance. In light of these circumstances, the FLRA's decision that IRS committed no unfair labor practice was arbitrary and capricious. We therefore reverse the FLRA's order dismissing the complaint and remand the case to the Authority for remedial action consistent with this opinion.

We share, however, the deep concern expressed by the IRS, and respected by the FLRA, that taxpayer confidentiality must be jealously guarded from careless or unnecessary disclosures. In order to ensure adequate protection for taxpayers' privacy, the Internal Revenue Code gives the IRS the power and the duty to require prior, high level approval of disclosures for purposes other than tax administration, and to discipline employees who act without such approval. The misadventure in this case, and our account of it, should serve to place IRS officials and employees, as well as union representatives, on clear notice that disclosures for personnel purposes, whether to employees or outsiders, are prohibited by statute unless authorized in the precise manner indicated in § 6103($l$)(4)(A).[11]

---

**10.** The ALJ's discussion of precedent is not to the contrary. *See* ALJ Decision at 18–20, *reprinted in* J.A. at 75–77. The ALJ cites arbitration decisions for the proposition that disclosure of confidential information to outsiders without authorization under § 6103($l$)(4)(A) violates the Code. This proposition, we agree, is correct and so well established that it should have been apparent to these employees and their attorneys. The issue in this case, however, is not whether the disclosure would have been

illegal if it were unauthorized, but whether the authorization actually received from Schreiber was sufficient to permit the disclosure. The arbitration cases relied upon by the ALJ fail to dispel the confusion that apparently surrounded this issue.

**11.** Such notice might be further advanced if, on remand, the FLRA chooses to order the IRS to post signs clearly explaining the breadth of the

Thus, the extraordinary circumstances that require a reversal here should not recur. The IRS remains armed by this judgment to defend fairly and vigorously the confidentiality on which taxpayers rely.

*Reversed and remanded for proceedings consistent with this opinion.*

statutory prohibition on disclosure and the § 6103(*l*)(4)(A) authorization procedure.