Bruce E. GARDNER, Appellant,

v.

UNITED STATES of America, et al., Appellees.

No. 99–5089.

United States Court of Appeals, District of Columbia Circuit.

Argued April 13, 2000.

Decided June 9, 2000.

Bruce E. Gardner, appearing pro se, argued the cause and filed the briefs for appellant.

Annette M. Wietecha, Attorney, U.S. Department of Justice, argued the cause for the Federal Appellees. With her on the brief were Jonathan S. Cohen, Attorney, and Wilma A. Lewis, U.S. Attorney. R. Craig Lawrence and W. Mark Nebeker, Assistant U.S. Attorneys, entered appearances.

Steven J. Green, Dona S. Kahn and Mark D. Silverschotz were on the brief of appellees State of California and California Franchise Tax Board.

Before: EDWARDS, Chief Judge, HENDERSON and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Bruce E. Gardner appearing *pro se* appeals the dismissal of his complaint alleging violations of federal and state law by federal and state authorities, primarily as a result of the disclosure of his tax returns and tax information, under Fed.R.Civ.P. 12 (b)(1), (2), & (6) and 41(b). For the reasons set forth in a companion case, *Gardner v. United States*, 211 F.3d 1305 (D.C.Cir.2000), the dismissal under Rule 41(b) cannot be affirmed. However, we conclude that the dismissal was proper under Rule 12(b) essentially for the reasons set forth in the district court's opinion of January 29, 1999. We need address only two of Mr. Gardner's contentions for, as the district court's opinion makes clear, his other contentions fail under well-settled law. We hold first, that the disclosure of Mr. Gardner's tax returns and tax information within the Internal Revenue

Service was permissible under the tax administration exception to the nondisclosure requirements of 26 U.S.C. § 6103 (1994 and Supp. IV 1998), and second, that Mr. Gardner's exclusive remedy for the disclosures of his tax records is under the Internal Revenue Code, and not the Privacy Act, 5 U.S.C. § 552a (1994 and Supp. IV 1998). Accordingly, we affirm.

## I.

As noted in the companion case, Mr. Gardner formerly worked as an attorney in the Sacramento, California Office of Chief Counsel to the Internal Revenue Service ("IRS") at the Treasury Department. His employment was terminated for alleged failures to comply with federal and state tax laws. He filed three complaints in the district court, relating to his compliance with federal and state tax laws, after unsuccessfully pursuing state and federal administrative remedies. We summarize the background to his contentions that the disclosure of his tax returns and tax information violated federal law and that he is entitled to relief under the Privacy Act as well as the Internal Revenue Code.

Briefly put, Mr. Gardner's supervisors in Sacramento, California, suspected as early as 1992 that he was not in full compliance with federal and state tax laws. When he agreed in 1994 to provide relevant information and then failed to do so, his supervisors obtained his federal tax returns and tax audit directly from IRS offices in Houston, Texas, and Fresno, California, and his state returns and tax information from state agencies in California and Maryland, where he had lived while working for the IRS in the District of Columbia. Upon concluding that Mr. Gardner had taken several unsupportable positions on his federal income tax returns for 1990–92 and that he had not timely filed his Maryland income tax returns for 1988–90, his supervisors offered him a chance to resign. When he refused, they commenced disciplinary proceedings and his employment was terminated November 26, 1994, for failure to file proper federal and state income tax returns. Thereafter, his application for unemployment benefits was denied by the California Unemployment Insurance Appeals Board, and his challenge to his termination was rejected by the Merit Systems Protection Board. He then filed a forty-four count complaint in the district court alleging, among other things, that the Treasury Department, the IRS, and individual IRS employees violated the Internal Revenue Code and the Privacy Act through intra-IRS disclosures of his tax return information while he was under investigation by the IRS and during the state and federal administrative proceedings that he commenced after his employment was terminated. Following the filing of dispositive motions by the defendants, the district court dismissed the complaint under Fed.R.Civ.P. 12(b) and 41(b).

The court has concluded in a companion case that the Rule 41(b) dismissal of Mr. Gardner's complaint must be reversed. *Gardner,* 211 F.3d at 1305, 1308–10. The question remains whether Mr. Gardner has demonstrated that the district court erred in dismissing his complaint under Rule 12(b). Most of his contentions raise issues that are well-settled in law adversely to him, and we need not repeat the district court's opinion.[1] There

---

1. The district court lacked personal jurisdiction over the individual IRS employees-appellees, because Mr. Gardner failed to allege the requisite contacts between these California and Texas residents and the District of Columbia under the Constitution and the District's long-arm statute. *See, e.g., International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); D.C.Code Ann. § 13–423 (1995). Mr. Gardner's defamation claim against the United States is barred, because suits for libel or slander are prohibited under the Federal Tort Claims Act. 28 U.S.C. § 2680(h)(1994). The district court lacked subject matter jurisdiction of Mr. Gardner's claims for alleged violations of the Family Leave Act and the Whistleblower Protection Act, because he failed to allege that he had exhausted his administrative remedies, as required under the Civil Service Reform Act.

are, however, two contentions that require some explication.

## II.

First, Mr. Gardner contends that the district court erred in ruling that the disclosure of his tax records fell within the exception to nondisclosure of § 6103(h)(1) for "tax administration purposes." In making this contention he relies on our decision in *National Treasury Employees Union v. Federal Labor Relations Board* ("*NTEU*"), 791 F.2d 183 (D.C.Cir.1986), and therein lies the need for clarification.

The Internal Revenue Code generally prohibits the disclosure of tax returns and tax information. Under 26 U.S.C. § 6103(a), "return and return information shall be confidential" and "no officer or employee of the United States ... shall disclose any return or return information" unless authorized by statute. As the court observed in *NTEU*:

> This general ban on disclosure provides essential protection for the taxpayer; it guarantees that the sometimes sensitive or otherwise personal information in a return will be guarded from persons not directly engaged in processing or inspecting the return for tax administration purposes. The assurance of privacy secured by § 6103 is fundamental to a tax system that relies upon self-reporting.

*Id.* at 184. In recognition of competing concerns, however, the Code includes a number of exceptions. Two are relevant here.

Under § 6103(h)(1), "[r]eturns and return information shall, without written request, be open to inspection by or disclosure to officers and employees of the Department of the Treasury whose official duties require such disclosure for tax administration purposes." 26 U.S.C. § 6103(h)(1). Another provision, § 6103(h)(4), authorizes disclosure of returns and return information "in a Federal or State judicial or administrative proceeding pertaining to tax administration ... if the taxpayer is a party to the proceeding...."[2] If the internal IRS investigation of Mr. Gardner's tax history, and the related state and federal administrative proceedings commenced by Mr. Gardner were "tax administration" matters, then the disclosures were proper under § 6103(h)(1) and (4). We therefore address the scope of the tax administration exception of § 6103(h)(1) and (4) with respect to these disclosures.

The Internal Revenue Code defines "tax administration" fairly broadly, to include "the administration, management, conduct, direction, and supervision of the execution and application of the internal revenue laws or related statutes (or equivalent laws and statutes of a State)....," *id.* § 6104(b)(4)(A)(i), as well as enforcement and litigation under the tax laws. *Id.* § 6104(b)(4)(B). While the language of this exception appears readily applicable to the daily work that IRS employees do in auditing and otherwise

---

*Hubbard v. EPA*, 809 F.2d 1, 5 (D.C.Cir.1987); *Carducci v. Regan*, 714 F.2d 171, 174–75 (D.C.Cir.1983). Mr. Gardner's claims against the California state defendants were barred by the Eleventh Amendment, which prohibits suit against a state or a state agency in federal court absent their consent or clear congressional abrogation of immunity, neither of which was present here. *See, e.g., Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54–55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

**2.** In the district court, the federal appellees also relied on § 6103(*l*)(4)(B), which authorizes the Secretary of the Treasury to disclose returns and return information to Treasury Department employees for their use in an "administrative action or proceeding affecting the personnel rights" of an employee or former employee, see § 6103(*l*)(4)(B), (A)(i), and argued that, in addition, the challenged disclosures were made pursuant to a good faith interpretation of § 6103. The district court granted the motion to dismiss the complaint under Rule 12(b) without indicating which provision applied to which disclosures. In view of our disposition, we do not address these subjects.

checking taxpayer returns and tax information, it is perhaps not as clearly applicable to internal personnel investigations. Taking the lead from Congress' broad language, however, courts have acknowledged that such investigations, where necessary to maintain the integrity of the tax enforcement authorities, are "tax administration" matters. Thus, in *Rueckert v. IRS*, 775 F.2d 208 (7th Cir.1985), the Seventh Circuit held that the tax returns of a state employee responsible for investigation of tax fraud were properly disclosed to persons within the state tax department who were investigating whether the employee had engaged in unauthorized outside employment. *Id.* at 212. Relying on the "tax administration" exception of § 6104(h)(1), the Seventh Circuit interpreted "the 'management' and 'supervision' of a state's internal revenue laws [to] include[ ] ensuring that its employees are free from conflicts of interest that could undermine the integrity of its system of administering the state tax laws." *Id.* Similarly, the Fifth Circuit recently held the "tax administration" exception of § 6103(h)(4) applicable to tax information disclosures made with regard to an IRS employee's Title VII and Merit Systems Protection Board challenges to the termination of his employment for noncompliance with the tax laws. *Hobbs v. United States*, 209 F.3d 408 (5th Cir.2000). The *Hobbs* Court observed that the IRS employee's "own compliance with the federal tax laws was something of key concern to the IRS; his position required him to examine the accuracy of corporate and individual tax returns and, in turn, to have a sophisticated understanding of the tax laws," and concluded that disclosures made in the context of administrative and judicial challenges to his termination "unquestionably encompassed tax administration". *Cf. United States v. Mangan*, 575 F.2d 32, 40 (2d Cir.1978). Given this reasonable construction of the broad language of § 6103(h)(1) and (4), it would seem that the disclosures of which Mr. Gardner complains were proper for pur-

poses of enabling the IRS to conduct its internal investigation of his tax history, and to explain the basis for the termination of his employment in the subsequent administrative proceedings.

Mr. Gardner contends, however, that our decision in *NTEU* not only bars the wholesale disclosures that he alleges occurred here, but holds that the "tax administration" exception of § 6103(h)(1) is inapplicable to personnel matters, and thus to his case. Although there is some broad language in *NTEU* suggesting Mr. Gardner's point, properly read in context *NTEU* does not demonstrate error by the district court. To the extent that *NTEU* concluded that an employee grievance unrelated to the employee's tax compliance history could entail disclosure only upon proper authorization under § 6103(*l*)(4)(A) and thus implicitly concluded that the grievance was not a "tax administration" matter justifying § 6103(h)(1) disclosure, *NTEU* is not dispositive of whether the IRS may, as a matter of tax administration, disclose an employee's tax records to IRS officials as part of an internal investigation of the employee's compliance with the tax laws, or in subsequent proceedings relating to a resulting termination decision.

In *NTEU*, the court held that disclosures by two IRS employees of confidential taxpayer information in the course of preparing for a grievance proceeding against the IRS violated the Internal Revenue Code's non-disclosure requirement. 791 F.2d at 184. The employees had disclosed to each other and to their union attorneys their "Revenue Officer Dailies" while challenging a negative performance evaluation of one of the employees. The unredacted dailies showed how each revenue officer spent his time and included the name of each taxpayer for whose case the officer was responsible, and a description of any action taken. *Id.* at 185. The court, recognizing that for a union to fulfill its duty to represent federal employees, it must have access to agency records for bargaining and grievance resolution pur-

poses, concluded that § 6103($l$)(4)(A) provided for such access.[3] *Id.* at 184. Pursuant to that provision, IRS had authorized certain upper level officers to act on the Treasury Secretary's behalf in approving disclosures.[4] The problem in *NTEU* was that the employees had not obtained such authorization, and consequently, the court held, the disclosures violated § 6103. *Id.* at 184–85, 187. The court never addressed the scope of the "tax administration" exception under § 6103, although it was implicit that the court did not consider the employee grievance to involve "tax administration," given its reliance on the authorization procedures of § 6103($l$)(4)(A), and its acknowledgment that such procedures would not be necessary for disclosures made pursuant to "tax administration" matters under § 6103(h)(1). *Id.* at 188. Thus, while the court stated broadly that "disclosures for personnel purposes, whether to employees or outsiders, are prohibited by statute unless authorized in the precise manner indicated in § 6103($l$)(4)(A)", *id.*, this statement was not made with regard to the scope of the "tax administration exception" under § 6104(h)(1) or (h)(4), but merely reiterated the court's conclusion that the type of disclosures at issue could not be made under § 6103($l$)(4)(A) absent proper authorization. *Id.* at 184–85, 187.

Moreover, the court's implicit holding that the grievance proceeding at issue did not constitute "tax administration" has no bearing on the instant case. The disclosures in *NTEU* occurred in the course of an employee grievance proceeding against the IRS relating to the quality and quantity of the employee's work performance. As an adversarial personnel matter, it did not implicate the IRS' need to guard the integrity of its operations. By contrast, the disclosures that Mr. Gardner challenges, as in *Rueckert* and *Hobbs,* occurred in connection with the IRS' legitimate need to protect the integrity of its tax enforcement operations by ensuring that its employees were in compliance with the tax laws. Because the disclosures of Mr. Gardner's tax records were made for the limited purposes of determining whether he had failed to comply with the tax laws and in justifying the resulting decision to terminate his employment, they were integral to the IRS' need to ensure that its employees' conduct does not "undermine the integrity of [the IRS'] system of administering the . . . tax laws," *Rueckert,* 775 F.2d at 212, and thus the disclosures were proper under the "tax administration" exception of § 6103(h)(1) and (4). Accordingly, the district court did not err in dismissing Mr. Gardner's disclosures claims under Rule 12(b).

## III.

Second, Mr. Gardner contends that the district court erred by dismissing under Rule 12(b)(6) his claims under the Privacy Act, 5 U.S.C. § 552a. In his complaint, Mr. Gardner raised Privacy Act claims that fall into three primary categories: disclosure of his tax information, expungement or amendment of information in his tax records, and disclosure of non-tax related information. Only the first

---

**3.** Section 6103($l$)(4) provides:
  The Secretary may disclose returns and return information—
    (A) upon written request—
      (i) to an employee or former employee of the Department of the Treasury, or to the duly authorized legal representative of such employee or former employee, who is or may be a party to any administrative action or proceeding affecting the personnel rights of such employee or former employee; or
      (ii) to any person, or to the duly authorized legal representative of such person,

whose rights are or may be affected by an administrative action or proceeding under section 330 of title 31, United States Code. . . .
26 U.S.C. § 6103($l$)(4).

**4.** In *NTEU* the court relied on IRS Delegation Order 184–85 (rev. 2, para. 1(e) (Mar. 21, 1982)), which set forth the authorization procedure under § 6103(4)(A) and allowed only certain upper level officers to act as the Secretary's designees in granting permission to disclose tax information. *NTEU,* 791 F.2d at 184–85.

category merits more than summary discussion.[5] As to this category, the district court ruled that any claims regarding the disclosure of tax information are preempted by the Internal Revenue Code. This is a question of first impression for this court.

In dismissing Mr. Gardner's disclosure claims, the district court relied on *Lake v. Rubin*, 162 F.3d 113 (D.C.Cir.1998). In *Lake*, the court held that taxpayers could not rely on the Privacy Act to obtain access to their tax records because the more specific provisions of the Internal Revenue Code, § 6103, controlled. *Id.* at 115–16. While *Lake* concerned access by taxpayers to their own records, the decision is instructive on whether § 6103 preempts Privacy Act claims regarding disclosure of taxpayer records by third parties.

Following the approach in *Cheek v. IRS*, 703 F.2d 271, 271–72 (7th Cir.1983), the court in *Lake* noted with approval the conclusion of the Seventh Circuit that § 6103 "overrides any inconsistent provisions of ... the Privacy Act". *Lake*, 162 F.3d at 116. That conclusion, the court observed, was supported by the legislative history, in view of the Senate Report's statement "that [tax information] should generally be treated as confidential ... except in those limited situations delineated in ... section 6103...." *Id.* at 116, n. 3 (citing S.Rep. No. 94–938 at 318 (1976)). In addition, the *Lake* court viewed the conclusion of exclusivity to be analogous to its precedent that the Freedom of Information Act does not govern the disclosure of information when another statute more specifically addresses the disclosure of that

information through " 'comprehensive, carefully tailored and detailed' provisions 'designed to protect both the interest of' those seeking the information and the interest in 'confidentiality.' " *Id.* at 116 (citing *Ricchio v. Kline*, 773 F.2d 1389, 1395 (D.C.Cir.1985)). That precedent is even more directly analogous to the instant case than it was to *Lake*, because it concerns the preemption of statutory provisions regarding disclosure to third parties by other, more specific provisions.

█ From the analysis in *Lake*, the district court could properly conclude with regard to Mr. Gardner's unauthorized disclosure claims that § 6103, with its detailed framework for access to and disclosure of tax records, preempts the relatively generic provisions of the Privacy Act. The Fifth Circuit, citing *Lake* and *Cheek*, likewise concluded that § 6103 trumps Privacy Act claims for unauthorized disclosures where the disclosures fall within § 6103's "tax administration" exception. Although declining to opine on whether preemption would exist absent a direct conflict between the Internal Revenue Code and the Privacy Act, the Fifth Circuit concluded that such a conflict did exist, and that the former thus trumped the latter, where a disclosure that related to "tax administration" (and thus was exempt from the Internal Revenue Code's nondisclosure restriction) was the basis for a claim under the Privacy Act.[6] The Fifth Circuit also cited *Cheek* and *Lake* for the broader proposition that the majority of courts to confront the issue have concluded that the Internal Revenue Code preempts the Privacy Act in "pro-

---

**5.** In view of the plain language of the Internal Revenue Code, the district court correctly ruled that 26 U.S.C. § 7852(e) stripped the court of subject matter jurisdiction over Mr. Gardner's Privacy Act claims for expungement or amendment of his tax records. 26 U.S.C. § 7852(e) (1994). *See also, e.g., England v. Commissioner*, 798 F.2d 350, 351–52 (9th Cir.1986). Similarly, the district court correctly ruled that the alleged disclosures of non-tax information, including "defamatory statements" made in state and federal administrative proceedings by IRS officials and in-

tra-Treasury/IRS disclosures of Mr. Gardner's wage records, constitute "routine uses" exempt from Privacy Act protection. *See* 5 U.S.C. § 552a(b)(3); 57 Fed.Reg. 13900, 14058–59 (1992). *Cf. Department of the Air Force v. Federal Labor Relations Authority*, 104 F.3d 1396, 1401–02 (D.C.Cir.1997).

**6.** In *Hobbs*, the Fifth Circuit cited *Sinicki v. United States Department of the Treasury*, No. 97 Civ. 0901, 1998 WL 80188 (S.D.N.Y. Feb.24, 1998), in which the district court had ruled that " '[s]ection 6103 should only im-

vid[ing] the exclusive remedy for disclosures of tax return information." *Hobbs,* 209 F.3d at 411. Those circuit courts of appeals allowing Privacy Act claims based on tax return disclosures neither addressed § 6103 preemption directly nor faced a situation in which the Privacy Act provided a remedy for conduct permissible under the Internal Revenue Code. *See Taylor v. United States,* 106 F.3d 833, 836–37 (8th Cir.1997); *Long v. IRS,* 891 F.2d 222, 224 (9th Cir.1989).

Because our analysis in *Lake,* supported by decisions in the Fifth and Seventh Circuits, leads inexorably to the conclusion that the Internal Revenue Code preempts the Privacy Act for remedies for disclosure of tax information, we hold that § 6103 is the exclusive remedy for a taxpayer claiming unlawful disclosure of his or her tax returns and tax information. The district court, therefore, did not err in dismissing under Rule 12(b)(6) Mr. Gardner's Privacy Act claims based on IRS disclosures of his tax returns and tax information.

Accordingly, we affirm the judgment of the district court.

plicitly repeal the Privacy Act to the extent it presents an irreconcilable conflict.'" *Hobbs,*

209 F.3d at 412 (quoting *Sinicki,* 1998 WL 80188, at *5).