**SHELL PETROLEUM, INC., and Subsidiary Corporations,
Plaintiff,**

v.

**The UNITED STATES, Defendant,**

No. 97–945 T.

United States Court of Federal Claims.

Sept. 21, 2000.

Charles W. Hall, Houston, Texas, for plaintiff. Kenneth C. Gobetz, Suffern, New York; Charles R. Herpich, Jr., Sara Trapani, Nancy T. Bowen and Shawn R. O'Brien, Houston, Texas, of counsel.

Dennis M. Donohue, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, DC, for defendant, with whom were George L.

Squires; Sheryl B. Flum; Mildred L. Seidman, Chief; and Paula M. Junghans, Assistant Attorney General.

## *OPINION*

DAMICH, Judge.

This matter is before the Court on Defendant's and Intervenor Berry Petroleum Company's (hereinafter "Berry") motions for reconsideration of the Court's Opinion, *Shell v. United States*, 46 Fed.Cl. 719 (2000), and to vacate the Court's Order of May 10, 2000, in which the Court ordered the Internal Revenue Service (hereinafter IRS) to produce certificates for tax credits filed by ten taxpayers under Internal Revenue Code Section 43 [1] for an *in camera* inspection. The Defendant contends that the Court erred in holding that information contained in the certificates is "directly related" to the resolution of an issue raised by the Plaintiff in this proceeding as provided by Section 6103(h)(4)(B).[2] Specifically, the Defendant argues that the Court incorrectly used a standard for disclosure of tax returns comparable to the standard of relevancy as found in Rule 401 of the Federal Rules of Evidence. Instead, the Defendant argues, the Court should have used a standard for disclosure predicated on a direct relationship between the Plaintiff and third-party taxpayers. The Defendant also contends that the information the Plaintiff seeks is not "directly related" to any issue in this proceeding.

The Plaintiff contends that the Court correctly used a standard of disclosure predicated on admissibility, and that the Defendant's interpretation of Section 6103(h)(4)(B) is superfluous with respect to Sections 6103(e) and 6103(h)(4)(C), and that the Defendant's motion to reconsider is a dilatory tactic designed to protract this proceeding.

Berry is a competitor of the Plaintiff's who contends that an *in camera* inspection by the Court and any disclosure of its Section 43 certificates would result in an unfair and anticompetitive advantage by the Plaintiff and the disclosure of Berry's trade secrets.

The Court reaffirms its May 10, 2000 Order to produce unredacted Section 43 certificates for an *in camera* inspection, and therefore DENIES both Defendant's and Intervenor Berry's Motions for Reconsideration for the reasons enumerated below. After its *in camera* inspection, the Court will decide whether these certificates ought to be disclosed to the Plaintiff and, if so, whether the Plaintiff will only receive redacted versions of the certificates.

## I. Standard of Review for Reconsideration of Orders

Rule 83.2(f) of the U.S. Court of Federal Claims permits the filing of a motion for reconsideration of orders. The decision to grant a motion for reconsideration is found within the scope of its sound discretion. *Yuba Natural Resources, Inc. v. United States*, 904 F.2d 1577, 1583 (Fed.Cir.1990). A motion for reconsideration will only be granted upon demonstration of a manifest error of law by the Court. *Franconia Assocs. v. United States*, 44 Fed.Cl. 315, 316 (1999); *Circle K Corp. v. United States*, 23 Cl.Ct. 659, 664–65 (1991). A court will deny a motion for reconsideration if the movant uses it merely as an opportunity to re-litigate issues already decided by the court. *Coconut Grove Entertainment, Inc. v. United States*, 46 Fed.Cl. 249 (2000).

## II. Background

The facts of the case are more fully set out in the Court's May 9, 2000 Opinion. A familiarity with that opinion is presumed.

Shell seeks a tax credit for tax years 1988 and 1989 predicated on Section 29 which provides that oil companies are eligible for an income tax credit of $3.00 for each barrel of "oil produced from ... tar sands." Section 29(c)(1)(A).

The statute does not define "tar sands." The Third Circuit adopted in *Shell Petroleum, Inc. v. United States*, 182 F.3d 212, 221 (3rd Cir.1999), the definition of "tar sands"

---

1. Unless otherwise noted, all sections refer to the Internal Revenue Code.

2. 26 U.S.C. § 6103(h)(4)(B)

found in Federal Energy Agency[3] Ruling 1976–4, 41 Fed.Reg. 25886–87 (1976) (hereinafter "FEA 1976–4").

FEA 1976–4 states that "tar sands" are:

The several rock types that contain an extremely viscous hydrocarbon which is not recoverable in its natural state by conventional oil well production methods including currently used enhanced recovery techniques. The hydrocarbon-bearing rocks are variously known as bitumenrocks, oil impregnated rocks, oil sands and rock asphalt.

41 Fed.Reg. at 25887.

The parties have agreed that the FEA definition should control in this case. The Defendant contends that the FEA definition requires an examination of the technology used to produce the oil. The Defendant believes that only those technologies that were not "conventional oil well production methods including currently used enhanced recovery techniques" qualify for the credit.

Although the Plaintiff challenges whether only selected production techniques are required to qualify for the tax credit, Shell sought discovery on these production techniques. The Plaintiff requested information contained on Section 43 certificates of its competitors. Section 43 permits a tax credit for the recovery of "crude oil." Section 43(c)(2)(A)(i). The Plaintiff argued that the Section 43 certificates would describe the production technique used for the recovery of "crude oil" and would therefore be helpful in determining whether the Plaintiff's production method was used by others in the industry, that is, which techniques are conventional and which are nonconventional. After the Defendant objected to providing this information based on Section 6103, the Plaintiff filed a motion to compel.

The Court granted the Plaintiff's motion to compel in part. The Court found that the Section 43 certificates themselves are "directly relevant," as required under Section 6103, to the resolution of an issue in this lawsuit. Clearly, an oil recovery technique that was used throughout the industry, as reflected in Section 43 certificates, could not be described as a unique technique.

The Plaintiff believes that the Section 43 certificates would be sufficiently detailed so as to let Shell glean information about the oil recovery methods from them. To minimize the possibility of inadvertent disclosure of identifiable business proprietary information to competitors, yet leaving the door open for the Plaintiff to have access to information necessary to prove its case, the Court decided to conduct an *in camera* inspection to determine which parts of the Section 43 certificates would be directly relevant to the oil recovery.

Pursuant to Rule 59 of the Court of Federal Claims ("RCFC"),[4] the Defendant filed a motion for reconsideration of the Court's decision. The defendant has two arguments. First, the Defendant argues that the Court used the incorrect legal standard for determining the meaning of the term "directly related." Second, when the Court applied that standard, the tax return information sought by Shell was not "directly related" to the issues in the lawsuit.[5]

### III. Analysis

#### A. *The Standard of Admissible Evidence Serves As A Guide In Determining The Meaning Of "Directly Related" in Section 6103(h)(4)(B).*

As a general rule, all tax return information is confidential. Section 6103(a). However, Section 6103 also provides a number of exceptions to the general rule. Sec-

---

**3.** The Federal Energy Agency was a predecessor to the Department of Energy. *Shell Petroleum, Inc. v. United States*, 182 F.3d 212, 214 n. 3 (3rd Cir.1999).

**4.** RCFC 59, the rule cited by the Defendant, is restricted to reconsideration of final judgments, not orders. The Defendant should have cited RCFC 83.2(f), a provision analogous to RCFC 59, and which authorizes the reconsideration of or-

ders. However, the standard of review for both provisions is the same.

**5.** The Defendant offered a collection of ancillary arguments that does not challenge the correctness of the Court's decision, but relates to the supposed liability of the Defendant in complying with the Court's Order and some procedural matters in carrying out the terms of the Order.

tion 6103(h)(4) permits disclosure of tax information in judicial and administrative tax proceedings under certain circumstances. The following provision is in dispute:

DISCLOSURE IN JUDICIAL AND ADMINISTRATIVE TAX PROCEEDINGS—A return or return information may be disclosed in a Federal or a State judicial or administrative proceeding pertaining to tax administration, but only—

... (B) if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding.

Section 6103(h)(4)(B).

The Defendant challenges the Court's interpretation of the phrase "directly related." The Defendant argues that the Court manifestly erred in equating "directly related" with the standard of relevancy in the Federal Rules of Evidence. Although the Court's opinion notes that the Plaintiff argued that the two standards are equivalent, the Court did not clearly decide in favor of the Plaintiff's argument. *See Shell v. United States,* 46 Fed.Cl. at 723.

The Defendant argues that "directly related" has a higher threshold than the discovery of relevant information or the discovery of admissible information. For whatever reason, the Defendant first raised this argument during the briefing on the motion for reconsideration. The Defendant also cites no cases for this proposition. Instead, as its authority, the United States points out that Congress intended to restrict the disclosure of tax returns. Since Congress used "directly related" in the statute, the Defendant argues that Congress must have contemplated a standard more restrictive than the common standard for relevant evidence.

In briefing the motion for reconsideration, the Defendant clearly articulated a proposed definition of "directly related." The Defendant proposed that only a "direct relationship" between the two taxpayers is "directly related" under Section 6103(h)(4)(B).

It is only where there is some tax benefit or tax liability nexus between the taxpayer and third party that is reflected in the third party's return or return information,

that *directly affects* resolution of an issue in the taxpayer's tax proceeding that disclosure of the third party's return or return information is authorized under section 6103(h)(4)(B)/(C), and even then, only so much of the third party's return or return information as *directly affects* a resolution of the issue in the proceeding, may be disclosed.

(Def.'s Reply, at 13) (emphasis in original).

The Defendant does not cite any cases that expressly require a "direct relationship" or a "nexus." Rather, the Defendant draws this requirement from cases where disclosure has been permitted in the past and where such a "direct relationship" did in fact exist between the taxpayer and third party. *Tavery v. United States,* 32 F.3d 1423 (10th Cir.1994) (affirming trial court decision that the third-party-wife's income and tax refunds were directly related to the issue of the taxpayer-husband's ability to pay attorneys' fees in considering court-appointed counsel); *Lebaron v. United States,* 794 F.Supp. 947 (C.D.Cal.1992) (disclosing the tax information of a third party was authorized by Section 6103(h)(4)(B) because the requested information was relied upon by the IRS in making its determination whether to investigate a tax-exempt organization); and *Christoph v. United States,* 919 F.Supp. 1576 (S.D.Ga.1995) (an ex-spouse's tax information showing her treatment of disputed payments after divorce was directly related to resolving deductibility of payments claimed to be alimony in the taxpayer's proceeding).

■ There are two difficulties with this proposed definition. First, the statute itself does not require that the taxpayer requesting discovery be "directly related" to the taxpayer whose returns are being sought. Second, Defendant's proposed definition runs afoul of a rule of statutory construction that a statute ought to be construed "... so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error." Sutherland Stat. Const. 46.06 (6th ed.2000). This rule of statutory construction is favored even when there is legislative history suggesting a contrary interpretation. *See Hart*

*v. United States,* 218 Ct.Cl. 212, 230–31, 585 F.2d 1025, 1035 (1978); *Aparacor v. United States* 215 Ct.Cl. 596, 605, 571 F.2d 552, 557 (1978). Other sections in the Internal Revenue Code already permit the disclosure of tax return information where the two parties have some direct relationship. *See, e.g.,* Section 6103(h)(4)(C) (permitting production when the parties have a "transactional relationship"); Section 6103(e)(1)(C) (permitting the production of a partnership return to the members of the partnership); Section 6103(e)(1)(D)(v) (Subchapter S corporations); and Section 6103(e)(1)(F) (trusts). If the Court were to limit Section 6103(h)(4)(B) to those instances where the two taxpayers are directly related, then these other statutes would be superfluous.[6] *United States v. Nordic Village, Inc.,* 503 U.S. 30, 36–37, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Ishida v. United States,* 59 F.3d 1224, 1230 (Fed.Cir. 1995); *Melrose Assocs., L.P. v. United States,* 43 Fed.Cl. 124, 140 (1999).

■ Rejecting the requirement that a direct relationship must exist between the taxpayer and the third party, the Plaintiff contends that the Court should interpret "directly related" as referring to the definition of "admissible evidence" found in Fed. R.Evid. 401. First, the Plaintiff equates evidence that has any "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable" and that is not subject to any other exclusion as "directly related." (Pl.'s Reply at 11). Second, the Plaintiff points out that "admissible evidence" encompasses a narrower scope of material than the standard for "discoverable evidence" found in RCFC 26(b)(1). (Pl.'s Reply at 12). The Plaintiff argues that Congress, by using the term "directly related," intended to restrict the disclosure of third-party taxpayer information from what would otherwise be disclosable under the usual standard for discoverable evidence: information that would be "reasonably calcu-

lated to lead to the discovery of admissible evidence." RCFC 26(b)(1).

The parties have asked the Court, therefore, to interpret the term "directly related." Obviously, the term itself is vague, and Congress does not define it. Courts in general have had a difficult time defining terms similar to "directly related" in other statutes. For example, in the context of interpreting ERISA's preemption provision, which states ERISA "shall supersede any and all State laws insofar as they ... relate to any employee benefit plan," 29 U.S.C. § 1144; the Supreme Court commented on the term "relate to."

> If "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for "[r]eally, universally, relations stop nowhere," H. James, Roderick Hudson xli (New York ed., World's Classics 1980). But that, of course, would be to read Congress's words of limitation as mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality. That said, we have to recognize that our prior attempt to construe the phrase "relate to" does not give us much help drawing the line here.

*New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995). When confronted with this challenge, the Supreme Court stated that the Congressional intent should be examined: "We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ... statute as a guide." *Id.,* 514 U.S. at 656, 115 S.Ct. at 1677, 131 L.Ed.2d at 705. Therefore, the Court turns to the objectives of Congress in enacting Section 6103.

The restrictions on disclosing tax return information must be understood within the context of a post-Watergate backlash against the use of information contained in tax re-

---

6. The Defendant's attempt to salvage a distinction between Section 6103(h)(4) and Section 6103(e) fails. The Defendant points out that Section 6103(e) authorizes disclosure to particular persons and does not authorize disclosure in a judicial proceeding. This distinction is without merit because once a person (for example, a partner in a partnership) obtains the sought return (from the partnership) that party can use the tax return as he or she or it sees fit.

turns for purposes of political advantage and intimidation. "The legislative history of section 6103 indicates Congress's overriding purpose was to curtail loose disclosure practices by the IRS." *Stokwitz v. United States*, 831 F.2d 893, 894 (9th Cir.1987). The "loose disclosure" that attracted particular attention from Congress was the use of tax return information for political gain. "Section 6103 was enacted in response to the use of tax return information for political purposes revealed during Watergate. 122 Cong. Rep. S. 24012–13 (daily ed. July 27, 1976) (statements of Sen. Dole) ("Remarks")." *Rueckert v. I.R.S.*, 775 F.2d 208, 210 (7th Cir.1985).

There is no evidence whatsoever that the Plaintiff is seeking the information for political gain. Rather, it appears that the Plaintiff is seeking third party taxpayer information that may assist it in resolving an issue in this case. Hence, disclosure of the Section 43 certificates to the Plaintiff would not interfere with the animating purpose of the statute: to prevent misconduct in the political realm.

A second purpose of the statute, according to *Rueckert*, is "assuring taxpayers of the confidentiality of their returns." This purpose, however, is not absolute because Section 6103 authorizes the disclosure of tax returns in several situations. Therefore, the Court must examine the law of tax return disclosure prior to Section 6103's enactment in 1976 to assist in determining whether the information sought by the Plaintiff can be disclosed.

Under the law existing prior to 1976, the Department of Justice could use tax returns for matters not "directly related" to a matter of tax administration.

> Among the Federal agencies, one of the biggest users of tax information on an individual case basis (as against a "mass" basis for statistical use) is the Department of Justice. Often this information is used in the investigation of nontax cases, including all types of criminal cases, civil cases involving tort liability of the Government, anti-trust cases, etc.

S.Rep. No. 94–938, at 317 (1976), *reprinted in* 1976 U.S.C.C.A.N. at 3746.

Further, under the pre–1976 law, the Justice Department could obtain tax returns for third parties not only to develop evidence directly pertaining to the tax liability of a taxpayer, but also for the impeachment of witnesses.

> [T]he Justice Department also may obtain directly from the IRS district offices tax returns of potential witnesses for the taxpayer or Government, and third parties with whom the taxpayer has had some transactional or other relationship.
>
> The returns of witnesses generally are obtained for purposes of cross examination and impeachment. In many cases, the information obtained from the witness' tax return is used to cast doubt upon his credibility as a witness, as opposed to establishing the tax liability in issue.
>
> Additionally, in the course of ... civil tax cases, third-party returns may be used to develop evidence pertaining directly to the tax liability of a taxpayer, or to impeach the testimony of the party whose tax liability is at issue (or to impeach the testimony of witnesses testifying on his behalf).
>
> The Government also obtains the tax returns of its own witnesses to determine the veracity of their proposed testimony and their credibility in general.

*Id.* at 324, *reprinted in* 1976 U.S.C.C.A.N. at 3754.

By enacting the revised Section 6103, Congress sought to address these abuses in the use of third party taxpayers in judicial proceedings. As the legislative history suggests, Congress sought to prohibit the use of income tax returns for the purpose of impeaching witnesses, yet retain the use of third party tax returns to "develop evidence pertaining directly to the tax liability of a taxpayer." *Id.* Although impeachment is admissible for the purpose of challenging the credibility of a witness, impeachment evidence is not, as such, relevant to whether a particular element in a tax case has been proved or not proved. The Conference Committee Report further confirms that "directly related" information is relevant information, and therefore disclosable: "The return or return information of a third party would be

disclosed to the Justice Department in the event that the treatment of an item reflected on his return is or may be relevant to the resolution of an issue of the taxpayer's liability under the Code." H.R. Conf. Rep. No. 94–1515 at 477–78, *reprinted in* 1976 U.S.C.C.A.N. at 4181–82. Although the Court is not prepared to say that Congress intended to permit the disclosure of any and all tax return information that would be admissible evidence at trial, the Court does find that the standard of admissibility in the Federal Rules of Evidence serves as a helpful guide in understanding the meaning of the phrase, "directly related."

The Court concludes, therefore, that it did not err in rejecting the Defendant's standard for disclosure under Section 6103(h)(4)(B).

**B.** *The Plaintiff Has Provided Sufficient Evidence That The Section 43 Certificates Contain Information That Is "Directly Related" To The Question Of Whether Shell Is Entitled To A Credit Under Section 29, Thereby Warranting An* In Camera *Inspection By The Court.*

The Defendant argues that the Court erred in its conclusion that Section 43 certificates are "directly related" to whether the Plaintiff is entitled to a tax credit under Section 29. The Defendant claims that Section 29 credits and Section 43 claims are not sufficiently comparable to be "directly related" even under a relevancy standard. (Def.'s Motion at 11–12). With respect to this issue, the Defendant has not offered any new arguments that warrant reconsideration of our decision. A motion for reconsideration should not be used simply as an opportunity for a party to take a second bite at the apple by rearguing positions that have been rejected. *See Stelco Holding v. United States,* 45 Fed.Cl. 541, 542 (2000). On these grounds, the Court holds that the Plaintiff provided sufficient evidence that the Section 43 certificates contain items that are "directly related" to whether the Plaintiff is entitled to a tax credit under Section 29.

Nevertheless, the Court wishes to address an additional argument raised by the Defendant. The Defendant suggests that the Section 43 certificates are not "directly related," even under a relevancy standard, by pointing to hypotheticals found in the legislative history. One hypothetical includes a reasonable compensation case in which, "the reflection on a corporate return of the compensation paid its president would not represent an item the treatment of which was relevant to the liability on an unrelated corporation with respect to the deduction it claims for the salary it paid its president." S.Rep. No. 94–938 at 326, *reprinted in* 1976 U.S.C.C.A.N. at 3755. It is surely correct that X corporation's deduction for salary is not, by itself, relevant as to whether Y corporation's compensation is reasonable. However, a sample of deductions for corporate salaries within Y's industry would be highly relevant as to whether Y's corporate compensation was reasonable.

Similarly, in a section 482 case in which the IRS would adjust income and deductions to correct transfer pricing not made at arms length between related companies, a single third party tax return could not be disclosed. *Id.* at 325–26, *reprinted in* 1976 U.S.C.C.A.N at 3755. Yet even here, Congress is contemplating a one-to-one comparison between one corporation's tax information and another corporation's analogous tax information. Nowhere did Congress contemplate that a sample of tax return information from third parties containing items that are directly related in nature to a taxpayer's item at issue would be outside the scope of the exception of Section 6103(h)(4)(B).

By analogy, if the Court's Order had requested Section 43 certificates from only one taxpayer, the information obtained would not be probative as to whether the Plaintiff was entitled to a credit under Section 29, and would therefore not be disclosable under Section 6103. However, ten Section 43 certificates are sufficient for the Court to determine, *in camera,* which items within the certificates contain information that would be of assistance to the Plaintiff in proving its case. Consequently, the certificates themselves are disclosable under Section 6103 for an *in camera* review.

The Court holds that the Plaintiff has proved that the Section 43 certificates con-

tain evidence that is "directly related" to resolving an issue in this case. Consequently, the Court will conduct an *in camera* inspection of the Section 43 certificates. After the *in camera* inspection is completed, the Court will have sufficient information to determine which specific items within the certificates contain information that is "directly related" to an issue in this lawsuit, and which specific items within the certificates do not contain any information that is "directly related" to any issue within this lawsuit. All items within the certificates that are not "directly related" shall be redacted by the Court if the Court determines that the certificates are to be produced to the parties.

The Court concludes, therefore, that it did not err in determining that Section 43 certificates might be "directly related" to whether Shell is entitled to Section 29 tax credit.

### C. *Berry Petroleum*

On August 10, 2000, Berry Petroleum ("Berry"), an Intervenor in this proceeding, also filed a motion to reconsider our May 9, 2000 Opinion and vacate our May 10, 2000 Order. Berry asserts that (i) it would be impossible to disclose its Section 43 certificates without revealing its identity, (ii) that the Plaintiff is an offsetting producer on Berry's core properties and would therefore gain an unfair competitive advantage, and (iii), that disclosure of the certificates would significantly increase the risk that the Plaintiff will obtain and use Berry's trade secrets in its own oil production of Central Valley.

Although the Court is sympathetic to Berry's concerns that it will be harmed by the disclosure of its certificates, the Court believe that it is premature to decide this issue at this time. As the Court stated in its August 10, 2000 Order, the Court is not

ordering the IRS to produce the Section 43 certificates to Shell and the Department of Justice. The Court is only making an *in camera* inspection for the purpose of ascertaining which items within the certificates are helpful to the Plaintiff in resolving an issue in the case.

Finally, should the Court ultimately determine that the certificates ought to be produced in some form to the Plaintiff, (and the Court does not so decide now), there is no reason why, at least in theory, disclosure could not be limited under seal or protective order to the Plaintiff's counsel. The Court will take every reasonable step necessary to assure that the likelihood of harmful disclosure of sensitive proprietary information of Berry and other similarly situated taxpayers will be minimal.

### IV. Conclusion

The Court concludes that its decision was not manifestly errant, and therefore the Court DENIES Defendant's Motion to Reconsider and Vacate, filed May 23, 2000. The Court also DENIES Intervenor Berry's Motion to Reconsider and Vacate, filed on August 10, 2000. Accordingly, the United States is ORDERED to produce for an *in camera* inspection the Section 43 certifications that are responsive to the Plaintiff's discovery request according to the terms of the Court's May 10, 2000 Order.[7]

---

7. The Defendant has argued that by complying with the May 10, 2000 Order, the Defendant and its employees could face both criminal and civil liability for obeying our Order. *See* Sections 7431 (damages against the United States); 7213 (criminal penalties for unauthorized disclosure); and 7213A (criminal penalties for unauthorized inspection). While the Court commends the Defendant's zeal for protecting the confidentiality of taxpayers, the Court believes that it is, in this instance, misplaced. The Defendant has provided no evidence that any federal employee has

ever been held liable for disclosing tax return information pursuant to a federal court order. The Court rejects their fears of liability as fantastic.

The Court also will not accept redactions or amalgamations of tax return information from the IRS or from the Defendants. The Defendants should not be permitted to have an unfair advantage over the Plaintiffs by obtaining early notice of the content of these otherwise confidential certificates.