# United States Court of Appeals for the Federal Circuit

---

**IN RE UNITED STATES,**
*Petitioner,*

---

Miscellaneous Docket No. 992

---

On Petition for Writ of Mandamus to the United States Court of Federal Claims in case no. 09-CV-793, Judge Edward Damich.

---

## ON PETITION

---

DAMON W. TAAFFE, Trial Attorney, Tax Division, Appellate Section, United States Department of Justice, of Washington, DC, for petitioner. With him on the petition was JONATHAN S. COHEN, Attorney.

DANIEL J. DUNN, Hogan Lovells US LLP, of Denver, Colorado, for respondent Panasonic Communications Corporation of America. With him on the response was ANN K. EDGAR. Of counsel was JESSICA L. ELLSWORTH, of Washington, DC.

---

Before BRYSON, SCHALL and PROST, *Circuit Judges.*

PER CURIAM.

**ORDER**

After paying under protest an excise tax for importing products containing ozone depleting chemicals (ODCs), the Panasonic Communications Corporation of America (Panasonic) filed suit seeking a refund based on alleged flaws in a gas chromatography test performed by the government during a tax audit to check for ODCs. During discovery, the United States Court of Federal Claims compelled the government to turn over the audit tests and related information of non-party taxpayer entities similarly tested, to help assess the validity and reliability of the test's methodology. This court is asked to decide as a matter of first impression whether that discovery can be sustained in light of the Internal Revenue Code's general prohibition against disclosure of tax "return information." I.R.C. § 6103(a), 26 U.S.C. § 6103(a). Because we hold that it cannot and that the court's order was a clear abuse of discretion, we grant the petition.

I.

A.

A brief description of the excise tax on ODCs and the government's audit process relating to imports will be helpful in understanding the issue raised by this petition.

Chlorofluorocarbons (CFCs) and halons are chemical compounds often used as refrigerants, cleaners, solvents, sterilants, and propellants in the manufacture of insulation, fast food cartons, and electronic items. Their longevity and stability allow them to persist in the atmosphere long enough to rise into the stratosphere twelve to thirty miles above the earth. Once there, the ultraviolet radiation from the sun causes CFCs and halons to become unstable, break apart, and release chlorine atoms, which readily react with the earth's ozone layer.

To discourage further depletion of the ozone layer, I.R.C. § 4681(a)(2) imposes an excise tax on any product imported for consumption, use, or warehousing, which is sold or used in the United States and in which any ODCs were used as material in the manufacturing or production of the product. The total liability for the excise tax for imported taxable products is reported on a quarterly basis on IRS Form 720.

Manufacturers are allowed to self-determine the excise tax owed based on the weight of each ODC used as a material in the imported product and to submit as supporting proof a letter signed by the manufacturer that adequately identifies the product and states the weight of each ODC used as a material in the product's manufacture.

The Internal Revenue Service (IRS), however, found that many foreign manufacturers were not paying the tax and were instead submitting letters claiming to have never used ODCs or to have eliminated their use to avoid the costs of switching to non-ODC manufacturing processes. This led the IRS to contract with the Pacific Northwest National Laboratory (PNNL), a federally funded research center, to develop a test to determine whether ODCs were being used in the manufacture of imported items and to assist the IRS in auditing reporting companies.

To the extent relevant here, according to the "Ozone Depleting Chemicals (ODC) Excise Tax Audit Techniques Guide," available on the IRS's website,[1] after placing the

---

[1]     http://www.irs.gov/businesses/small/article/0,,id=186588,00.html.

electronic circuit board of an item being testing in a sterile environment, PNNL subjects it to various levels of heat. The gases released from the board at each temperature level are captured and analyzed in order to detect for the presence, although not the actual quantity, of ODCs in the board.

## B.

The facts relevant to this petition are not in dispute.

During the calendar quarters ending June 30, 2002 through December 31, 2004, Panasonic manufactured and imported for sale in the United States consumer telephones assembled in Tijuana, Mexico. Panasonic reported that it owed no excise tax and submitted a certified letter from its overseas manufacturers and suppliers stating that no ODCs were used in the manufacture of the phones.

In 2005, the IRS audited Panasonic's imports. PNNL purchased Panasonic's phones from retail stores and tested the phones' circuit boards. After completing its audit, the IRS assessed Panasonic a total of $9,885,671.91 in excise taxes, penalties, and interest payments.

Panasonic paid the ODC excise tax assessments for two alleged taxable transactions for the quarterly tax period ending September 30, 2002, and for one alleged taxable transaction in each remaining quarterly tax period ending June 30, 2002 through December 31, 2004. It then filed a complaint in the Court of Federal Claims seeking a refund. Panasonic's complaint asserts that no ODCs were ever used in its manufacturing process, and that PNNL's testing procedures are scientifically invalid and unreliable.

In preparation for a mini-trial on the validity and reliability of PNNL's testing procedures, Panasonic

sought to discover information regarding PNNL's testing of commercial products during the IRS's audit of other taxpayers.

For instance, Panasonic's Interrogatory No. 6 reads in relevant part: "[i]dentify all instances in which the IRS has used testing for ODCs as a basis to determine or consider whether excise taxes should be imposed on any taxpayer other than Panasonic . . .[including] for each case . . . the testing methodologies used, the results of the testing (i.e., whether ODCs were detected), the amount of the taxes assessed, [and] whether the assessment was appealed or contested[.]"

After the United States refused to turn over the requested materials on confidentiality grounds, Panasonic sought and obtained from the Court of Federal Claims an order compelling discovery.

The court held that, while the information sought was "return information" as broadly defined under I.R.C. § 6103(a), and thus generally prohibited from disclosure by the IRS, it was nonetheless authorized to be disclosed in these proceedings under the enumerated exception provided in I.R.C. § 6103(h)(4)(B). *Panasonic Commc'ns Corp. of Am. v. United States*, 09-CV-793 slip op. at 3-6 (Fed. Cl. Apr. 20, 2011). That provision authorizes disclosure of tax information on a tax return in a judicial or administrative proceeding pertaining to tax administration "if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding[.]" I.R.C. § 6103(h)(4)(B).

The court determined that PNNL's testing activities relating to other taxpayers were "derivatively part of the 'treatment' of ODC tax liability, which is the 'item' identified by Plaintiff and which is reflected on the taxpayer's return, whether as a specific line item or as part of the

overall tax liability reported." *Panasonic*, slip. op. at 5. The court therefore concluded that the information was subject to the § 6103(h)(4)(B) exception. *Id.* The court also determined that PNNL's testing of other taxpayers' products met the "directly related" requirement of § 6103(h)(4)(B) because Panasonic's discovery was "directed to the purpose of the mini-trial, that is, the validity of the scientific testing for ODCs employed by PNNL, not to a direct comparison of its excise tax assessment with that of other taxpayers" *Id.*

Before this court, the United States contends that the Court of Federal Claims improperly interpreted § 6103(h)(4)(B) in compelling discovery, so as to require the IRS to turn over information it is statutorily required to keep confidential. Thus, the United States urges that this court issue a writ of mandamus directing the Court of Federal Claims to vacate its order compelling disclosure.

## II.

Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), this court has authority to issue the requested writ as "necessary or appropriate in aid of" jurisdiction. The use of mandamus is limited to correcting a lower court's usurpation of judicial power or clear abuse of discretion. *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004); *see also In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1387 (Fed. Cir. 1996).

Notwithstanding the extraordinary nature of such relief, this court has issued the writ in appropriate cases to prevent the wrongful exposure of privileged or confidential communications. *See Regents*, 101 F.3d at 1387; *see also Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 601-02 (2009) (noting that an appellate court may grant a writ of mandamus to correct a "particularly injurious or novel privilege ruling").

Thus, in *In re Seagate Technology, LLC*, 497 F.3d 1360, 1367 (Fed. Cir. 2007) (en banc), we explained that "'mandamus review may be granted of discovery orders that turn on claims of privilege or confidentiality when (1) there is raised an important issue of first impression, (2) the privilege would be lost if review were denied until final judgment, and (3) immediate resolution would avoid the development of doctrine that would undermine the privilege.'" (quoting *Regents*, 101 F.3d at 1388).

These criteria are met here. The tax law requires millions of individuals and business entities to furnish the IRS with highly confidential information. This information, as well as the documents that are created by the IRS in connection with it, is indispensible to the administration of the revenue laws. Recognizing that the effective operation of our tax system hinges on the willingness of taxpayers to provide such information, Congress has taken steps to guarantee that confidentiality. Section 6103(a) of the Code prohibits the IRS from disclosing tax "returns" and tax "return information" except in specifically enumerated circumstances, a prohibition which is enforced by civil and criminal penalties.

Not only is the issue of the scope of the § 6103(h)(4)(B) exception vital to matters of taxpayer confidentiality and proper tax administration but it also is a matter of first impression for this or any court of appeals, and one that has created a split within the United States Court of Federal Claims. *Compare Panasonic*, 09-CV-793, slip op. at 5-6 (holding the disclosure requirements satisfied if the item is directly related to the purpose of discovery), *and Shell Petroleum, Inc. v. United States*, 47 Fed. Cl. 812, 817-19 (2000) (using the Federal Rules of Evidence "as a helpful guide" to broadly construe § 6103(h)(4)(B) to allow discovery of tax treatment of similarly situated third parties), *with Vons Cos., Inc. v. United States*, 51 Fed. Cl. 1 (2001) (relying exclusively on legislative history to

narrowly construe § 6103(h)(4)(B) to deny discovery for similarly situated third parties). Hearing the issue will thus bring needed uniformity to this area of the law. Further, absent our immediate review, the protection afforded against disclosure by § 6103(a) will be lost in this case. We therefore proceed to the merits.

### III.

The government contends that the Court of Federal Claims was without authority to compel disclosure of confidential taxpayer information in the form of PNNL's testing results and related information because of the general prohibition of § 6103(a). The government also contends that the exception in § 6103(h)(4)(B) is inapplicable. Our analysis of the language, structure, and legislative history of these provisions leads us to agree with the government that the decision of the Court of Federal Claims requiring disclosure of this private taxpayer information was a clear abuse of discretion.

Insofar as relevant here, the Internal Revenue Code obligates the government to keep confidential and not disclose "returns and return information."[2] Section

---

[2] Section 6103(b)(1) defines "return" to mean "any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed." Section 6103(b)(2) broadly defines "return information" to include "data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of

6103(h)(4)(B), however, provides an exception to non-disclosure:

> A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only . . . —(B) if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding.

I.R.C. § 6103(h)(4).

As detailed in its motions papers below and reiterated here, Panasonic rests its claim for disclosure on the argument that the "'item' reflected on a return is the ODC excise tax liability and the 'treatment' of that item with respect to third party taxpayers—that is, the testing of those taxpayers' products." Panasonic also argues that this "item" is "directly related to" the issue of PNNL's testing methodology at issue in the mini-trial. Panasonic's argument suffers from at least three fatal flaws.

First, we reject Panasonic's argument that the "directly related" requirement is met here. As with any statutory construction, the starting point of our analysis is the language of the statute itself; here, "directly related." *Bailey v. United States*, 516 U.S. 137, 144 (1995). We find that "directly related," as used in the statute, is ambiguous on its face; we therefore resort to legislative history to clarify its meaning. *See Church of Scientology of Cal. v. I.R.S.*, 484 U.S. 9, 16-17 (1987) (relying on legislative history to construe section 6103(a)); *Vons Cos., Inc.*, 51 Fed. Cl. at 16 (relying on legislative history to determine the meaning of "directly related"); *Shell Petroleum, Inc.,* 47 Fed. Cl. at 817 (same); *see also Koons Buick*

---

any person under this title for tax, penalty, interest, fine, forfeiture, or other imposition, or offense."

*Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 62 (2004) (resorting to legislative history to resolve an ambiguity in statute).

The legislative history describes § 6103(h)(4)(B)'s "directly related" requirement by contrasting it to § 6103(h)(2)(B), which allows disclosure to the Department of Justice if "the treatment of an item reflected on such return *is or may be related to* the resolution of an issue in the proceeding or investigation." (emphasis added). The legislative history pertaining to § 6103(h)(2)(B) articulates an "item test" for determining whether a third party's treatment of an item meets the "is or maybe related" requirement. The "item test" allows disclosure where "the treatment of an item reflected on [the third party's] return is or may be relevant to the resolution of an issue of the taxpayer's liability under the Code." S. Rep. No. 94-938, at 325 (1976); H.R. Rep. No. 94-1515, at 477 (1976) (Conf. Rep.).

According to the Senate Report, the "item test" is satisfied in instances where, for example, the treatment of an item on the return of a pass-through entity, such as a subchapter S corporation, partnership, or trust, is relevant to the resolution of the taxpayer's liability because of the relationship between the taxpayer (as shareholder, partner, or beneficiary) and the third party. S. Rep. No. 94-938, at 325.

Both the Senate report and House Conference report build on this test to describe the scope of § 6103(h)(4)(B)'s "directly related" language, explaining that "[t]he disclosure of a third party return in a tax proceeding will be subject to the same item . . . test described above, except that such items . . . must have *a direct relationship* to the resolution of an issue of the taxpayer's liability." S. Rep. No. 94-938, at 326; H.R. Rep. No. 94-1515, at 478 (emphasis added). By using "directly" to modify the "related to"

language in § 6103(h)(4)(B), Congress intended an even narrower exception to apply for disclosure to members of the public in judicial proceedings, such as in this case.

Therefore, scenarios that do not satisfy the item test under § 6103(h)(2)(B) would never satisfy the narrower standard required by the "directly related" language of § 6103(h)(4)(B). The Senate report provides the following example of a situation that does not meet the item test:

> The return reflecting the compensation paid to an individual by an employer other than the taxpayer whose liability is at issue would not meet . . . the item . . . test[] described above in a reasonable compensation case. Thus, for example, the reflection on a corporate return of the compensation paid its president would not represent an item the treatment of which was relevant to the liability of an unrelated corporation with respect to the deduction it claims for the salary it paid its president.

S. Rep. No. 94-938, at 325. This example, as well as others in the legislative history,[3] makes clear that the treatment of an item on a third party's return is not related, never mind directly related, to the resolution of a taxpayer's issue when the only link between the third

---

[3] The Senate report also explains that "[i]n section 482 cases (involving the reallocation of profits and losses among related companies), where it is sometimes necessary to determine the prices paid for certain services and products at arms-length between unrelated companies, the return or return information of a company which was unrelated to the taxpayer company would not be disclosable under either the item or transaction tests described above." S. Rep. No. 94-938, at 325-26.

party and taxpayer is the same tax treatment for a similar item of liability, income, deduction, or credit.[4] *See Vons Cos., Inc.*, 51 Fed. Cl. at 17. This is the exact "treatment" identified by Panasonic here; the only link between the third parties that Panasonic seeks return information from and itself is the treatment of ODC tax liability, and therefore the information is not directly related.[5] What is more, as *Vons Cos., Inc.* pointed out, "[t]o release return information in such circumstances would fly in the face not only of the specific legislative purpose underlying section 6103(h)(4)(B), but also the broader legislative history of section 6103(a), which repeatedly emphasizes the vital importance to tax administration of maintaining the privacy of tax returns and return information." *Id.* at 18.

----

[4]    Accepting a broader reading of § 6103(h)(4)(B) that would allow such scenarios to warrant disclosure would essentially rewrite the statute so that, contrary to Congress's intent, the release of third party taxpayer information would be the norm rather than the exception. *See Vons Cos., Inc.*, 51 Fed. Cl. at 17 (reasoning that broadly construing this section "would be tantamount to rewriting the statute, deleting, at the very least, the word 'directly' and, perhaps the word 'related,' as well").

[5] That the evidence Panasonic seeks is not "directly related" under § 6103(h)(4)(B), does not imply that it is not relevant under the Federal Rules of Evidence. The legislative history makes clear that the two are not coextensive; the "directly related" requirement is far narrower and different than evaluating whether evidence is relevant. Thus, to the extent that *Shell Petroleum* suggests that "the Federal Rules of Evidence serves as a helpful guide in understanding the meaning of the phrase, 'directly related,'" 47 Fed. Cl. at 819, it is incorrect.

Second, Panasonic arrives at its erroneous understanding of § 6103(h)(4)(B) by failing to give effect to every clause and word in the statute. We read the words "in tax statutes . . . in their ordinary and natural sense." *Helvering v. San Joaquin Fruit & Inv. Co.*, 297 U.S. 496, 499 (1936). In its ordinary and natural usage, "reflected" means "manifest" or "apparent," Webster's New World Dictionary 989 (9th ed. 1984). PNNL's testing results and related information, however, did not exist until after the third party taxpayers filed their tax forms, and thus could not be "reflected" on such filings within the ordinary usage of that term.

Panasonic is thus left to focus on the IRS's "treatment" of an item during the audit process. It would have made no sense, however, for Congress to condition disclosure based on the IRS's "treatment" of an "item" as "reflected" on a "return," for the IRS does not submit a return from which the treatment of an item is reflected. If, on the other hand, "treatment" covers the taxpayer's handling of an item on a return, the phrase "reflected on such return" is properly understood as referring to what is shown on the face of the return submitted by the taxpayer whose "return or return information" is being sought, thereby giving each part of the statute a role. *See United States v. Menasche*, 348 U.S. 528, 538-539 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'" (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883))).

Third, nothing in the language of the statute indicates, or even suggests, that Congress intended for the courts to focus on the relevance of the "return information" sought to the issue in the proceeding (as opposed to the relevance of the treatment of the item on the return being sought to the issue in the proceeding). Nonetheless, Panasonic's argument is premised on this flawed assumption.

When Congress intended to permit disclosure of information based on relevance of the information sought to an event or issue, it said so clearly and unequivocally. The very next subsection of the statute, for example, provides for disclosure "if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding." I.R.C. § 6103(h)(4)(C). The lack of similar language in § 6103(h)(4)(B), which Congress presumably would have included had it intended for disclosure based on the relevance of the information sought, is strong evidence that the exception the trial court relied upon for disclosure does not authorize such action. *See Bates v. United States*, 522 U.S. 23, 29-30 (1997) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))).

In view of the lack of anything in the language or history of these provisions that even suggests, let alone establishes, that Congress intended to authorize disclosure of information such as the information sought in this case, we hold that the Court of Federal Claims clearly erred as a matter of law in compelling discovery. We therefore grant the petition and direct the court to vacate its order.

Accordingly,

IT IS ORDERED THAT:

(1) The petition is granted. The Court of Federal Claims is directed to vacate its April 20, 2011 order

compelling the United States to turn over "return information."

(2) Panasonic's motion to vacate the stay is denied as moot.

FOR THE COURT


  January 20, 2012                        /s/ Jan Horbaly
         Date                           Jan Horbaly
                                        Clerk