# United States Tax Court

159 T.C. No. 1

WHISTLEBLOWER 972-17W,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 972-17W.                                    Filed July 13, 2022.

————————

Whistleblower WB provided information to the IRS regarding three target taxpayers. The Government initiated actions against the target taxpayers and collected proceeds, but the Whistleblower Office denied WB's claim for an award under I.R.C. § 7623(b). WB petitioned our Court for review.

The Court ordered R to file with the Court redacted and unredacted copies of the administrative record, which included returns and return information of the target taxpayers. R filed a redacted copy of the administrative record and requested that the Court excuse him from filing an unredacted copy to protect I.R.C. § 6103 information. The Court ordered R to submit the unredacted copy for review in camera. R moved the Court to modify its order, arguing that I.R.C. § 6103 does not permit R to disclose to the Court the information R redacted.

*Held*: On these facts, consistent with *Li v. Commissioner*, 22 F.4th 1014 (D.C. Cir. 2022), the Tax Court has jurisdiction to hear this case.

*Held, further*, I.R.C. § 6103(h)(4)(A) authorizes R to submit the unredacted administrative record to the Court.

**Served 07/13/22**

———————

*George Munoz*, for petitioner.

*Bartholomew Cirenza* and *Ryan Z. Sarazin*, for respondent.

OPINION

TORO, *Judge*: Section 6103(a)[1] provides that returns and return information generally must be kept confidential and that officers and employees of the United States are precluded from disclosing returns and return information unless specifically authorized by the Code. One such authorization appears in section 6103(h)(4).

Section 6103(h)(4) permits, in certain circumstances, the disclosure of returns or return information in the context of a federal or state judicial or administrative proceeding that pertains to tax administration. Among other things, disclosure is authorized in a judicial proceeding that "arose out of, or in connection with, determining the taxpayer's civil or criminal liability, or the collection of such civil liability, in respect of any tax imposed [by the Code]." I.R.C. § 6103(h)(4)(A).

In this whistleblower case, the Court ordered the Commissioner of Internal Revenue to submit for in camera review an unredacted copy of the administrative record on which the case is based. The Commissioner moved that the order be modified, arguing that section 6103(a) precludes him from complying. The Commissioner reasons that the administrative record includes returns and return information that the Code does not authorize him to disclose. Regarding section 6103(h)(4), the Commissioner agrees that this case is a judicial proceeding pertaining to tax administration, but contends that the other requirements of section 6103(h)(4) have not been satisfied with respect to the materials he wishes to protect from disclosure.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After assuring ourselves that we have jurisdiction in light of the recent decision of the U.S. Court of Appeals for the District of Columbia Circuit in *Li v. Commissioner*, 22 F.4th 1014 (D.C. Cir. 2022), we consider the Commissioner's contentions. We conclude that section 6103(h)(4)(A) authorizes disclosing in this proceeding the returns and return information that the Commissioner seeks to withhold. This is so because this case "arose . . . in connection with" determining the civil and criminal tax liabilities of the taxpayers whose returns and return information are at issue. Accordingly, section 6103 does not preclude the Commissioner from submitting to the Court an unredacted copy of the administrative record. We will therefore deny the Commissioner's Motion.

*Background*

The following facts are derived from the pleadings, the parties' motion papers, the declarations and exhibits attached thereto, and the redacted administrative record filed with the Court. These facts are stated solely for the purpose of ruling on the motion before us and not as findings of fact in this case. *See Whistleblower 769-16W v. Commissioner*, 152 T.C. 172, 173 (2019).

Petitioner is a whistleblower who provided information to the Internal Revenue Service (IRS) regarding three individuals (taxpayers 1, 2, and 3). The Government pursued actions against all three individuals (targets) (including criminal actions with respect to two of the targets) and ultimately collected proceeds from each of them. But the IRS Whistleblower Office (WBO) denied the whistleblower's claim for an award under section 7623(b). The WBO acknowledged to the whistleblower that "[t]he IRS reviewed the information you provided as part of an ongoing investigation/examination of the taxpayer(s)." But, the WBO explained, "that review did not result in the assessment of additional tax, penalties, interest or other amounts with respect to the issues you raised." The WBO further noted that "[t]he IRS did assess additional tax, penalties, interest or additional amounts but the information you provided was not relevant to those issues." The whistleblower petitioned our Court for review.

In general, our Court reviews whistleblower cases based on the administrative record. *See Kasper v. Commissioner*, 150 T.C. 8, 20 (2018). Accordingly, the Court ordered the Commissioner to file with the Court redacted and unredacted copies of the administrative record compiled by the WBO. The Commissioner filed a redacted copy of the

administrative record and requested that the Court excuse him from filing an unredacted copy "to protect . . . section 6103 information and . . . other identifying information." The Court ordered the Commissioner to submit to the Court, for review in camera, any documents that the Commissioner wished to redact to preserve a privilege or protect taxpayer information.

In response, the Commissioner moved the Court to modify its order, requesting that the Court strike the portion of the order that directed the Commissioner to submit the entire unredacted administrative record for review in camera. The Commissioner argued that there is no exception in section 6103 that would permit him to disclose the redacted information to the Court. The whistleblower filed a response opposing the Commissioner's Motion. The Court then ordered the parties to file separate memoranda addressing the applicability of section 6103 to this case. We now consider the merits of the Commissioner's request.

*Discussion*

I.    *Section 7623 Background*

Section 7623 provides for awards to individuals (commonly referred to as whistleblowers) who submit information to the Government about third parties who have underpaid their taxes or otherwise violated the internal revenue laws. Section 7623(a) authorizes discretionary payments in certain circumstances, while section 7623(b) provides for nondiscretionary (i.e., mandatory) awards.

Under section 7623(b)(1), a whistleblower generally is entitled to a mandatory award if the Secretary of the Treasury proceeds with an administrative or judicial action based on information provided by the whistleblower and collects proceeds as a result of the action.[2] The

---

[2] Section 7623(b)(1) provides:

If the Secretary proceeds with any administrative or judicial action described in subsection (a) based on information brought to the Secretary's attention by an individual, such individual shall, subject to paragraph (2), receive as an award at least 15 percent but not more than 30 percent of the proceeds collected as a result of the action (including any related actions) or from any settlement in response to such action (determined without regard to whether such proceeds are available to the Secretary). The determination of the amount of such

amount of the award generally is between 15 and 30% of the collected proceeds, depending on the extent to which the whistleblower substantially contributed to the action. I.R.C. § 7623(b)(1).

In some circumstances, a mandatory whistleblower award under section 7623(b)(1) may be reduced or denied. Specifically, section 7623(b)(2) provides for the potential reduction of an award if the Secretary's action is based principally on publicly available information rather than the whistleblower's information, while section 7623(b)(3) provides for the reduction or denial of an award based on the whistleblower's culpability for the tax underpayments underlying the award. Additionally, section 7623(b)(5) sets out certain monetary thresholds that must be satisfied for section 7623(b) to apply in the first instance.

## II.    *Jurisdiction*

### A.    *General Principles*

Like all federal courts, we are a court of limited jurisdiction. *Whistleblower 21276-13W v. Commissioner*, 155 T.C. 21, 26 (2020). We exercise jurisdiction only over matters that Congress expressly authorizes us to consider. *Id.*; *see also* I.R.C. § 7442. Of course, we always have jurisdiction to determine whether we have jurisdiction. *Whistleblower 21276-13W*, 155 T.C. at 26. And we must assure ourselves of our jurisdiction even when not asked to by the parties. *Id.*

The relevant jurisdictional provision in a whistleblower case is section 7623(b)(4). It provides that "[a]ny determination regarding an award under [section 7623(b)](1), (2), or (3) may . . . be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)." I.R.C. § 7623(b)(4). Determinations under those provisions generally are made by the WBO, which reviews whistleblower claims to determine whether an award will be paid and, if so, decides the amount of the award. *See, e.g.*, I.R.C. § 7623(b)(1), (2)(A), (3).

### B.    *Tax Court Precedent*

Based on the plain text of section 7623(b)(4), it is clear that our Court has jurisdiction over any appeal of a determination that a

award by the Whistleblower Office shall depend upon the extent to which the individual substantially contributed to such action.

whistleblower is entitled to an award under section 7623(b)(1). Additionally, we have interpreted section 7623(b)(4) as granting our Court jurisdiction over cases where the WBO rejects or denies a whistleblower's claim.[3] *See Lacey v. Commissioner*, 153 T.C. 146, 163 n.19 (2019) ("[A] denial or rejection is a (negative) 'determination regarding an award', so the Tax Court has jurisdiction where, pursuant to the WBO's determination, the individual does *not* receive an award."), *abrogated by Li v. Commissioner*, 22 F.4th 1041; *see also Cooper v. Commissioner*, 135 T.C. 70, 75 (2010) ("The statute expressly permits an individual to seek judicial review in [the Tax] Court of the amount or denial of an award determination." (citing Staff of Joint Comm. on Taxation, Technical Explanation of H.R. 6408, The "Tax Relief and Health Care Act of 2006," at 89 (J. Comm. Print 2006)), *abrogated by* 22 F.4th 1041. Our Court has held that jurisdiction exists regardless of whether the Commissioner proceeds with an action or collects proceeds based on the whistleblower's information. *See Lacey*, 153 T.C. at 169 (stating that the Court's review of a WBO determination to reject a claim without taking action is not preempted by the absence of "action" and "proceeds," which will always be absent when the WBO rejects a claim at the threshold). But the D.C. Circuit in *Li v. Commissioner*, 22 F.4th 1014, established new precedent on this point.[4]

C.     Li v. Commissioner

In *Li*, the D.C. Circuit disagreed—at least in part—with our prior interpretations of section 7623(b)(4). Pointing to the statutory text, the court of appeals concluded that the Tax Court does not have jurisdiction to review the WBO's threshold rejection of a whistleblower claim. *Id.* at 1017. The D.C. Circuit reasoned that the WBO makes an award determination "under [section 7623](b)(1)" when the IRS actually proceeds with an action based on a whistleblower's information. *Id.* In the case of a rejection, the WBO rejects the whistleblower's claim at the threshold, without the IRS's ever taking action against the target taxpayer. *Id.* Therefore, the D.C. Circuit concluded, the WBO's decision to reject a claim is not an award determination under section 7623(b)(1), (2), or (3), and the Tax Court does not have jurisdiction to review that

---

[3] For a discussion of rejections and denials, see *Rogers v. Commissioner*, 157 T.C. 20, 22–31 (2021).

[4] Absent a stipulation by the parties, this case would be appealable to the D.C. Circuit. *See* I.R.C. § 7482(b)(1) (flush text) (providing that the D.C. Circuit is the proper appellate venue for review of Tax Court decisions in cases in which no other venue rule applies); *see also Kasper*, 150 T.C. at 11 n.1.

decision under section 7623(b)(4). *Id.* ("The WBO did not forward Li's Form 211 to an IRS examiner for further action, and the IRS did not take any action against the target taxpayer. There was no proceeding and thus no 'award determination' by the IRS for Li's whistleblower information. Therefore, the Tax Court had no jurisdiction to review the WBO's threshold rejection of Li's Form 211.").

D.    *Application to This Case*

The D.C. Circuit's decision in *Li* addressed threshold rejections, and the court explicitly noted that it did not decide whether our Court would have jurisdiction over a case in which the IRS proceeded against a target taxpayer based on a whistleblower's information, but the WBO wrongly denied the whistleblower's application for an award. *Id.* at 1017 n.2. This essentially is what the whistleblower alleges took place in the case before us. Based on the text of section 7623(b) and the reasoning in *Li*, we conclude that we have jurisdiction to review the WBO's determination.

As we have described, section 7623(b)(4) grants the Tax Court jurisdiction over an appeal of "[a]ny determination regarding an award under [section 7623(b)](1), (2), or (3)." Section 7623(b)(1) provides that a whistleblower generally is entitled to an award when the Secretary proceeds with an action based on information provided by the whistleblower and collects proceeds.

In *Li*, the D.C. Circuit determined that we did not have jurisdiction because the most basic threshold specified in section 7623(b)(1) had not been crossed—i.e., the IRS had not proceeded with an action against the target taxpayers.[5] By contrast, the parties in the case before us agree that the Commissioner proceeded with an action. Indeed, here the Commissioner collected proceeds with respect to each of the three target taxpayers identified by the whistleblower. But the WBO determined that the whistleblower was not entitled to an award despite these facts. The question we must decide is whether that determination constituted "[a]ny determination regarding an award under [section 7623(b)](1)." Consistent with *Li*, we conclude that it did.

The D.C. Circuit observed in *Li* that "an award determination by the IRS arises only when the IRS '*proceeds* with any administrative or

---

[5] Because the IRS had not proceeded with an action, it also had not collected proceeds.

judicial action described in subsection (a) based on information brought to the Secretary's attention by [the whistleblower] . . . .'" *Li v. Commissioner*, 22 F.4th at 1017 (quoting I.R.C. § 7623(b)(1)). A determination that no award is warranted even though the IRS has proceeded with an action and collected proceeds in that action is still a "determination regarding an award."[6] Indeed, it would make little sense for Congress to authorize judicial review for whistleblowers who receive wrongfully reduced awards, but not for whistleblowers who are wrongfully denied an award altogether after the threshold requirements of section 7623(b)(1) are met.

The inclusion in section 7623(b)(4) of an express reference to section 7623(b)(3) supports this conclusion. Section 7623(b)(4) specifically establishes our jurisdiction to review determinations under section 7623(b)(3). As relevant here, section 7623(b)(3) provides that the WBO shall "deny any award" if a claim is brought "by an individual who planned and initiated the actions that led to the underpayment of tax" on which the award would be based and that individual "is convicted of criminal conduct arising from [that] role." The combined effect of section 7623(b)(3) and (4) is that a whistleblower who has been denied an award on the ground that the whistleblower was convicted of criminal conduct arising from planning the actions that led to the understatement of tax may challenge that determination in our Court even though the WBO issued no award. Put another way, paragraphs (3) and (4) of section 7623(b) make clear that a WBO determination not to grant an award after the IRS has taken action against a target taxpayer and collected proceeds as a result of the action can be subject to our review.

Similarly, and consistent with *Li*, we hold that when the WBO determined that the whistleblower here was not entitled to an award even though the Government had proceeded with actions against the target taxpayers and collected proceeds, the WBO made a determination regarding an award under section 7623(b)(1). By the terms of section 7623(b)(4), we have jurisdiction over an appeal of that determination.

---

[6] The parties agree that the IRS took action and collected proceeds in this case, and so we need not decide whether, under *Li*, we would have jurisdiction to review a WBO denial in a case in which the IRS proceeded with an action, but did not collect proceeds, or in which the IRS did not proceed with an action. A case presenting both these fact patterns is currently pending before the D.C. Circuit. *See Kennedy v. Commissioner*, T.C. Memo. 2021-3, *appeal docketed*, No. 21-113 (D.C. Cir. June 7, 2021).

Based on certain statements in *Li*, one might argue that all the elements of section 7623(b)(1)—including the requirement that any action be in fact "based on the whistleblower's information"—are jurisdictional. But that's not what the D.C. Circuit decided in *Li*; rather, its holding is confined to threshold rejections in which the IRS takes no action. *See Li v. Commissioner*, 22 F.4th at 1017. A case like this one, where the IRS has both acted and collected proceeds, raises jurisdictional considerations not present in *Li*.

Specifically, if we were to read *Li* as requiring our Court to make a factual determination that the IRS proceeded against a target and collected proceeds from that target "based on" the whistleblower's information simply to establish our jurisdiction over the appeal of the WBO decision, then every case in which the WBO denies a claim on the ground that the information provided by the whistleblower was not useful to the IRS would require a full determination of the merits before we would know whether we had jurisdiction to begin with. Put a different way, if our jurisdiction to review the WBO's decision not to make an award in a case that involved both an examination of the taxpayer and the collection of proceeds exists only if it turns out (contrary to the WBO's conclusion) that the recovery was in fact "based on" the whistleblower's information, then (in cases involving the fact pattern now before us) the whistleblower would win on the merits in virtually every case over which we have jurisdiction (except perhaps those subject to section 7623(b)(3)), and we would have no jurisdiction in virtually every case that the whistleblower would otherwise lose on the merits. *See* I.R.C. § 7623(b)(1) (providing that if the Secretary proceeds with an action based on the whistleblower's information, the whistleblower "shall" receive an award).

Additionally, any proceeding to establish whether an action was "based on" the whistleblower's information for jurisdictional purposes would raise complicated questions regarding the scope and standard of our review. In particular, while we generally review whistleblower determinations for abuse of discretion based on the administrative record, *see Kasper*, 150 T.C. at 20, 22, courts in other contexts have employed different standards when jurisdictional and merits issues are intertwined, *see, e.g.*, 2 James W. Moore et al., Moore's Federal Practice § 12.30[3], at 12-50.2(11) (3d ed. 2021) ("When the jurisdictional facts are too intertwined with the merits to permit the determination to be made independently, the court should either employ the standard applicable to a motion for summary judgment (if the material jurisdictional facts are undisputed) or leave the jurisdictional

determination to trial."); *see also, e.g., Herbert v. Nat'l Acad. Of Sci.*, 974 F.2d 192, 198 (D.C. Cir. 1992) ("[T]hough the trial court may rule on disputed jurisdictional facts at any time, if they are inextricably intertwined with the merits of the case it should usually defer its jurisdictional decision until the merits are heard." (citing *Land v. Dollar*, 330 U.S. 731 (1947))); *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) ("[W]hen the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery . . . ."); *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990) (explaining that a case in which a fact "is a necessary predicate to the court's subject matter jurisdiction" as well as "an element the plaintiff must establish to win the case," the "proper course of action . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case" (citations omitted) (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)). We do not read *Li*, which expressly declined to reach fact patterns in which the IRS proceeds with an action, *see Li v. Commissioner*, 22 F.4th at 1017 n.2., to sweep so broadly as to require trials on the merits to determine jurisdiction in all zero-award whistleblower cases in which the IRS has proceeded with an action and collected proceeds.

Having established that we have jurisdiction to hear this case, we next consider whether section 6103 authorizes the Commissioner to submit an unredacted copy of the administrative record to the Court. As discussed further below, we conclude that it does.

III.    *Section 6103*

A.    *General Principles*

As we have said, section 6103(a) provides that returns and return information generally must be kept confidential unless disclosure is specifically authorized by the Code. *See Mescalero Apache Tribe v. Commissioner*, 148 T.C. 291, 294 (2017). The authorization at issue here is section 6103(h)(4), which provides, in relevant part:

> A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only—
>
> > (A) if the taxpayer is a party to the proceeding, or the proceeding arose out of, or in connection with, determining the taxpayer's civil or

criminal liability, or the collection of such civil liability, in respect of any tax imposed under this title;

(B) if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding; [or]

(C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding . . . .[7]

The statute then proceeds to provide its own limitation on disclosure: A "return or return information shall not be disclosed as provided in subparagraph (A), (B), or (C) if the Secretary determines that such disclosure would identify a confidential informant or seriously impair a civil or criminal tax investigation."  I.R.C. § 6103(h)(4) (flush text).

There is no dispute that the documents the Commissioner has redacted in this case are either returns or return information protected by section 6103(a).[8]  Similarly, the parties agree that this case is a federal judicial proceeding that pertains to tax administration.[9]  *See Confidential Informant 92-95-932X v. United States*, 45 Fed. Cl. 556, 559 (2000) (holding that a whistleblower's suit seeking, among other things, a declaratory judgment related to a contract entered into with the IRS was a proceeding involving tax administration); *see also* Treas. Reg. § 301.6103(h)(4)-1(a) ("A whistleblower administrative proceeding . . . is an administrative proceeding pertaining to tax administration within the meaning of section 6103(h)(4).").  And neither party asserts that the

---

[7] Section 6103(h)(4)(D) also authorizes disclosure "to the extent required by order of a court pursuant to section 3500 of title 18, United States Code, or rule 16 of the Federal Rules of Criminal Procedure."  The parties agree that section 6103(h)(4)(D) is not relevant here.

[8] Section 6103(b)(1) and (2) provides detailed definitions for both terms.  *See Church of Scientology of Cal. v. IRS*, 484 U.S. 9, 12 (1987).

[9] Section 6103(b)(4) provides a broad definition of "tax administration."  *See, e.g., Gardner v. United States*, 213 F.3d 735, 739 (D.C. Cir. 2000) (referring to the "broad language" of the provision); *United States v. Mangan*, 575 F.2d 32, 40 (2d Cir. 1978) (describing the definition as "so sweeping as to compel rejection of a restrictive interpretation").

statutorily provided restriction from disclosure set out in the flush text of section 6103(h)(4) applies here. The only dispute, therefore, is whether at least one of the three subparagraphs of section 6103(h)(4) set out above applies.

The Commissioner argues that portions of the returns and return information included in the administrative record fall within subparagraph (B) because they are directly related to the resolution of an issue in this proceeding—i.e., whether the WBO erred when it denied the whistleblower's claim for an award.[10] The Commissioner did not redact these "directly related" items when he filed the administrative record with our Court, but he did redact other information that in his view was not directly related to the resolution of this proceeding.

With respect to the redacted information, the whistleblower contends that subparagraphs (A), (B), and (C) of section 6103(h)(4) all authorize disclosure. The Commissioner contends that none of the three subparagraphs applies. As explained further below, we agree with the whistleblower that subparagraph (A) authorizes disclosure of the redacted information and therefore do not address the potential application of subparagraphs (B) and (C). *See Tavery*, 32 F.3d at 1430 (noting that the exceptions in section 6103(h)(4) are disjunctive and declining to go further once one exception was found to apply).

B.    *Section 6103(h)(4)(A)*

Section 6103(h)(4)(A) authorizes the disclosure of tax returns or return information in a federal judicial proceeding pertaining to tax administration if "the taxpayer is a party to the proceeding, or the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability." At issue here are returns and return information of taxpayers 1, 2, and 3, who are not parties to this case. Accordingly, section 6103(h)(4)(A) will apply only if this case "arose out of, or in connection with" determining the civil or criminal

---

[10] As the Commissioner recognizes, the courts of appeals have reached different conclusions on whether section 6103(h)(4)(B) permits the disclosure of returns only or returns *and* return information. *Compare United States v. NorCal Tea Party Patriots (In re United States)*, 817 F.3d 953, 962 (6th Cir. 2016) (concluding that section 6103(h)(4)(B) permits the disclosure of returns only), *and In re United States*, 669 F.3d 1333, 1339–40 (Fed. Cir. 2012) (per curiam) (suggesting the same), *with Tavery v. United States*, 32 F.3d 1423, 1430 (10th Cir. 1994) (allowing the disclosure of return information under section 6103(h)(4)(B)). The D.C. Circuit has not spoken on this issue.

liabilities of taxpayers 1, 2, and 3 in respect of any tax imposed under the Code.

1. *"In Connection With"*

Because the phrase "arose in connection with determining a taxpayer's civil or criminal liability" is broader than the phrase "arose out of determining the taxpayer's civil or criminal liability," *see, e.g.*, *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1260 (D.C. Cir. 2020) ("[T]he phrase 'arising out of' sweeps less broadly than 'in connection with' or 'in relation to.'"), we turn our attention to the meaning of the phrase "in connection with."

We begin with first principles. As the Supreme Court has explained:

> In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself. *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407 (2011). Where . . . that examination yields a clear answer, judges must stop. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999).

*Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019). And, when the statute does not define a term, "we ask what that term's 'ordinary, contemporary, common meaning' was when Congress enacted" the relevant provision. *Id.* at 2362 (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

Section 6103 does not define the phrase "in connection with." But when section 6103(h)(4)(A) was enacted in 1978, *see* Revenue Act of 1978, Pub. L. No. 95-600, § 503, 92 Stat. 2763, 2880, the term "connection" was defined broadly (and in relevant part) to mean any link, association, or relationship, *see, e.g.*, *Connection*, *The American Heritage Dictionary of the English Language, New College Edition* (1976) ("2. Anything that joins, relates, or connects; a bond; a link. 3. An association, alliance, or relation . . . .");[11] *see also Fort Howard Corp. &*

---

[11] Dictionary definitions of "connection" have remained relatively consistent over time. *See, e.g.*, *Connection*, *Webster's New Twentieth Century Dictionary of the English Language* (2d ed. 1966) (defining "connection," in relevant part, as "that which connects or unites; a tie; a bond; means of joining" and "a relation; association;

*Subs. v. Commissioner*, 103 T.C. 345, 351–52 (1994) (citing *Webster's Third New International Dictionary* 480 (1986)), *supplemented by* 107 T.C. 187 (1996).

This definition is consistent with interpretations of the phrase "in connection with" by various courts over time, including ours. The Tax Court has interpreted the phrase "in connection with" as meaning "related to." *See Adams Challenge (UK) Ltd. v. Commissioner*, 154 T.C. 37, 63 (2020) (analyzing relevant cases and concluding that there is no appreciable difference between the two phrases). Courts of appeals, including the D.C. Circuit, have reached the same conclusion. *See, e.g., Azima v. RAK Inv. Auth.*, 926 F.3d 870, 877 (D.C. Cir. 2019) (collecting authorities and stating that "'in connection with' . . . is equivalent to 'in relation to'"); *see also John Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (Alito, J.) (explaining that "a dispute 'arise[s] . . . in relation to'" an agreement if "the origin of the dispute is related to that agreement, *i.e.*, [if] the origin of the dispute has some 'logical or causal connection'" to the agreement (quoting *Webster's Third New International Dictionary* 1916 (1971))).[12] Accordingly, as the Supreme Court and the D.C. Circuit have acknowledged, the phrase "in connection with" establishes a standard that is "quite broad." *Azima*, 926 F.3d at 878; *see also Mont v. United States*, 139 S. Ct. 1826, 1832 (2019) ("The Court has often recognized that 'in connection with' can bear a 'broad interpretation.'" (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006))).

---

specifically, (a) the relation between things that depend on, involve, or follow each other"); *Connection, The Random House College Dictionary* (1980) ("3. anything that connects; link; bond. 4. association; relationship . . . ."); *Connection, The American Heritage Dictionary of the English Language* (3d ed. 1992) (defining "connection," in relevant part, to mean "[o]ne that connects; a link," "[a]n association or a relationship," or a "reference or relation to something else"); *Connection, The American Heritage Dictionary of the English Language* (5th ed. 2016) (same).

Additionally, modern dictionaries sometimes define "in connection with" as an idiom meaning "in relation to." *See, e.g., Connection, The American Heritage Dictionary of the English Language* (5th ed. 2016).

[12] For additional authorities, see also *Huntsman v. Commissioner*, 905 F.2d 1182, 1184 (8th Cir. 1990) (interpreting "in connection with" to mean having "an 'association' or 'relation' with"), *rev'g* 91 T.C. 917 (1988), and *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128–29 (2d Cir. 2001) (Sotomayor, J.) (noting that the term "relation" is defined as a "connection" or "reference" to, and that courts have described the term "relating to" as equivalent to the phrases "in connection with" and "associated with").

We are mindful, however, that, as the Supreme Court observed in interpreting another statute involving the disclosure of personal information, "[t]he phrase 'in connection with'" can also be read as "essentially 'indeterminat[e]' because connections, like relations, '"stop nowhere."'" *Maracich v. Spears*, 570 U.S. 48, 59–60 (2013) (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655 (1995)).[13] Therefore, in interpreting that phrase, we must as always consider "the structure of the statute and its other provisions." *Id.* at 60 (citing *N.Y. State Conf. of Blue Cross & Blue Shield Plans,* 514 U.S. at 656); *see id.* at 88 (Ginsburg, J., dissenting) ("I agree with the Court that the words 'in connection with' must be contained within reasonable bounds."); *see also Culbertson v. Berryhill*, 139 S. Ct. 517, 522 (2019) (applying the same statutory interpretation principle).[14]

---

[13] *Maracich* involved the interpretation of the Driver's Privacy Protection Act of 1994 (DPPA). *See* 18 U.S.C. §§ 2721–2725. The DPPA governs the disclosure of personal information in the records of state motor vehicle departments (DMV). *Maracich*, 570 U.S. at 52. The DPPA prohibits the disclosure of personal information unless the disclosure is for a purpose covered by one of 14 statutory exceptions. *Id.* The provision at issue in the case, 18 U.S.C. § 2721(b)(4), allowed disclosure

> [f]or use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

The question before the Court was whether lawyers who served as counsel in a class action against South Carolina car dealers permissibly "obtained names and addresses of thousands of individuals from the South Carolina DMV in order to send letters to find plaintiffs for a lawsuit they had filed against car dealers for violations of South Carolina law." *Maracich*, 570 U.S. at 52. In a five-to-four decision, the Court held that, "[i]n light of the text, structure, and purpose of the DPPA," "an attorney's solicitation of clients is not a permissible purpose covered by the (b)(4) litigation exception." *Id.* The four dissenting justices "would read [the] statutory language to permit use of DMV information tied to a specific, concrete proceeding, imminent or ongoing, with identified parties on both sides of the controversy." *Id.* at 81 (Ginsburg, J., dissenting).

[14] The Supreme Court has "eschewed uncritical literalism leading to results that no sensible person could have intended" "when confronted with capacious phrases" like "in connection with," "related to," and "arising from." *Jennings v. Rodriguez*, 138 S. Ct. 830, 840 (2018) (Alito, J.) (plurality opinion) (cleaned up) (collecting authorities); *see also FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 278 (2016, revised Jan. 28, 2016) ("As we have explained in addressing similar terms like 'relating to' or 'in connection with,' a non-hyperliteral reading is needed to prevent the

Additionally, following the Supreme Court's lead, we must exclude from the scope of section 6103(h)(4)(A) those proceedings that have only a "remote relation to" the determination of a taxpayer's liability. *Maracich*, 570 U.S. at 59; *see id.* at 89 (Ginsburg, J., dissenting) ("[W]hen the Court has sought a limiting principle for similar statutory language, it has done so to prevent the application of a statute to matters with 'only a tenuous, remote, or peripheral connection' to the statute's core purpose." (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans*, 514 U.S. at 661)). At the same time, "we need not consider the outer bounds of the term 'in connection with'" when the matters under review are "*directly* tied" to one another. *Mont*, 139 S. Ct. at 1832.

Applying these principles in the context of section 6103, we have no difficulty concluding that this case arose "in connection with" (i.e., in relation to) determining the civil or criminal liabilities of taxpayers 1, 2, and 3 and is therefore within the scope of section 6103(h)(4)(A). When, as here, a whistleblower provides information to the IRS on a target taxpayer and the IRS proceeds with an action and collects proceeds from that target taxpayer, the decision whether to grant the whistleblower an award—as well as our eventual review of that decision—is inextricably linked with determining the target taxpayer's civil or criminal liability for at least two reasons.

To begin with, the IRS's action in determining the target taxpayer's liability and the outcome of that action (including the collection of additional tax) are clear but-for causes of the proceeding before the Court. Indeed, under the reasoning of *Li v. Commissioner*, 22 F.4th at 1017, the existence of an IRS action to determine the liabilities of the target taxpayer is a prerequisite to our jurisdiction to hear any whistleblower case, including this one. In that very direct sense, therefore, this case arose "in connection with" the IRS actions that determined the taxpayers' liabilities: we could not hear the case without the actions.

Additionally, what the IRS determined with respect to the target taxpayers and what it collected from those taxpayers are key inquiries in analyzing the merits of this proceeding, which is focused on evaluating "the extent to which the [whistleblower] substantially

statute from assuming near-infinite breadth." (first citing *N.Y. State Conf. of Blue Cross & Blue Shield Plans,* 514 U.S. at 656; and then citing *Maracich*, 570 U.S. at 59)); *Elec. Power Supply Ass'n*, 577 U.S. at 296 (Scalia, J., dissenting) (agreeing that the "so-called 'affecting' jurisdiction cannot be limitless").

contributed to [the IRS's] actions," I.R.C. § 7623(b)(1)—i.e., the actions to "detect[] underpayments of tax, or . . . detect[] and bring[] to trial and punishment persons guilty of violating the internal revenue laws or conniving at the same," I.R.C. § 7623(a)(1) and (2). Essentially, the particulars of the IRS's actions that determined the target taxpayer's liabilities will decide the outcome of this case. Given this reality, it is hard to see how one can resist the conclusion that this judicial proceeding arose in connection with (and is quite closely related to) determining the target taxpayers' liabilities or the collection of those liabilities. The entire case is predicated on the whistleblower's assertion that the whistleblower's efforts gave rise to (or at least contributed to) the IRS's actions against the target taxpayers and substantially contributed to the IRS's determination that more tax was owed and to its ultimate collection. In that context, the proceeding has a very strong "logical or causal connection" to the IRS's determination of the target taxpayers' liability and, as then-Judge Alito concluded in a similar context, arose in connection with (or in relation to) that determination. *John Wyeth & Brother Ltd.*, 119 F.3d at 1074 (quoting *Webster's Third New International Dictionary* 1916 (1971)).

In short, the strength of the connection present here is more than enough to satisfy the "quite broad" standard recognized by the case law,[15] *see Azima*, 926 F.3d at 878, and ensures that section 6103(h)(4)(A) is not interpreted to assume impermissible, "near-infinite breadth,"[16] *see Elec. Power Supply Ass'n*, 577 U.S. at 278. We therefore conclude that this case arose in connection with determining the civil or criminal liabilities of taxpayers 1, 2, and 3 and that section 6103(h)(4)(A) authorizes disclosure of the administrative record.

---

[15] The connection here, for example, is at least as strong as the connection in *Mont*, 139 S. Ct. at 1832, in which the Supreme Court held that "the phrase [imprisonment] 'in connection with a conviction' encompasses a period of pretrial detention for which a defendant receives credit against the sentence ultimately imposed" because the "pretrial incarceration is *directly* tied to the conviction when it is credited toward the new sentence."

[16] We note in this regard that the Supreme Court has interpreted similar statutory text to allow for the disclosure of sensitive third-party information in the context of litigation. *See Maracich*, 570 U.S. at 64–65 (noting that the exception under 18 U.S.C. § 2721(b)(4) "allows use of the most sensitive kind of information, including medical and disability history and Social Security numbers" "for investigation in anticipation of litigation and *in the litigation itself*" (emphasis added)).

### 2. *The Commissioner's Arguments*

The Commissioner appears to acknowledge that the plain text of section 6103(h)(4)(A) supports our conclusion, conceding in his briefing that his own interpretation is "narrower in scope than the plain language implies." Resp't's Mem. 17–18 (Doc. 121). But he contends that section 6103(h)(4)(A) is ambiguous. And, given that predicate, the Commissioner urges us to turn to legislative history and the purpose of section 6103 to discern its meaning. These, the Commissioner argues, prove that the use of the phrase "arose out of, or in connection with" in section 6103(h)(4)(A) "must denote" the following circumstances:

> [P]roceedings in which the party seeking disclosure of a nonparty's return information faces some legally enforceable liability, obligation, or sanction at the hands of the government (as opposed to a non-government litigant); and, where the party and non-party have a relationship or connection that existed prior to, and independent of, the proceedings themselves.

Resp't's Mem. 22–23. The Commissioner goes on to conclude that whistleblower cases do not satisfy this standard.

We need not decide whether the predicate of the Commissioner's arguments—that section 6103(h)(4)(A) is ambiguous—is correct. Even if we were to grant that predicate for the sake of analysis, *but see Food Mktg. Inst.*, 139 S. Ct. at 2364 ("Even [members of the Supreme Court] who sometimes consult legislative history will never allow it to be used to 'muddy' the meaning of 'clear statutory language.'" (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011))); *Maracich*, 570 U.S. at 76 ("[T]he surrounding text and structure of the DPPA resolve any ambiguity in [the] phrases 'in connection with' and 'investigation in anticipation of litigation' in (b)(4)."), the Commissioner's arguments do not carry the day.

### a. *Legislative History*

The Commissioner argues that examples from the legislative history of a parallel provision in section 6103(h) show that Congress had

a more limited understanding of section 6103(h)(4)(A).[17]  We are not persuaded.

We note first that the legislative history relates to a parallel provision, not the one actually before us.  But even if one accepts that legislative history as probative to the meaning of the text before us, the conference report the Commissioner cites simply provides some illustrative examples of circumstances that would fall within the parallel provision.  *See* H.R. Rep. No. 95-1800, at 293 (1978) (Conf. Rep.), *reprinted in* 1978-3 C.B. (Vol. 1) 521, 627.[18]  The conference report does not purport to provide an exhaustive account of the provision's application or discuss circumstances that would not be covered.  *See id.* In other words, the legislative history provides no indication that it was "clearly intended to be an all-inclusive expression of what [either the parallel provision or] the section [before us] covers." *Ryan v. Bureau of Alcohol, Tobacco & Firearms*, 715 F.2d 644, 649 (D.C. Cir. 1983) (Scalia, J.).  As the Supreme Court explained in *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1143 (2018):

> Even for those Members of this Court who consider legislative history, silence in the legislative history, "no matter how 'clanging,'" cannot defeat the better reading of the text and statutory context. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495, n.13 (1985).  If the text is clear, it needs no repetition in the legislative history; and if the text is ambiguous, silence in the legislative history cannot lend any clarity. *See Avco Corp. v. Department of Justice*, 884 F.2d 621, 625 (DC. Cir. 1989).

---

[17] The parallel provision, section 6103(h)(2)(A), deals with the disclosure of returns and return information to the Department of Justice for use in connection with investigations and state and federal proceedings.

[18] The conference report states, in relevant part:

[T]he return of a taxpayer who is not a party to the proceeding may be made available to the Department of Justice if the proceeding arose out of, or in connection with, determining the taxpayers' civil or criminal tax liability or the collection of civil tax liability.  This provision would apply in such situations as where the taxpayer's liability may have given rise to transferee liability or where the taxpayer did not (or was unable to) intervene in a summons enforcement case.

H.R. Rep. No. 95-1800, at 293 (Conf. Rep.), 1978-3 C.B. (Vol. 1) at 627.

In short, even "[f]or those who consider legislative history relevant," *Warger v. Shauers*, 574 U.S. 40, 48 (2014), the legislative history here is fully consistent with our interpretation of section 6103(h)(4)(A). *See, e.g., Church of Scientology of Cal. v. IRS*, 792 F.2d 153, 162 n.4 (D.C. Cir. 1986) (Scalia, J.) ("Legislative history is used to clarify the meaning of a text, not to create extra-statutory law. If it can ever be the basis for plainly departing from the text, it assuredly cannot be so when an interpretation that honors both the text and the history is available."), *aff'd*, 484 U.S. 9 (1987).

#### b. *Statutory Purpose*

The Commissioner also invokes the purpose of section 6103, arguing that our interpretation of section 6103(h)(4)(A) would allow "the unfettered disclosure" of return information to "any whistleblower who might file a Tax Court appeal," resulting in "wholesale, unregulated access to return information of any taxpayer that a whistleblower might choose to target." Resp't's Mem. 19–20. This outcome, the Commissioner contends, would be contrary to the overarching purpose of section 6103, which in the Commissioner's view is to "restrict access to return information within well-defined limits."[19] *Id.* at 18. We disagree for at least four reasons.

First, the general rule of section 6103 and that provision's numerous exceptions reflect Congress's balancing of competing interests: (1) the interest of taxpayers in maintaining the confidentiality of their returns and return information and (2) the interests of others whose rights might be affected by the information. *See, e.g., Gardner*, 213 F.3d at 738 (citing *Nat'l Treasury Emps. Union v. FLRB*, 791 F.2d 183, 184 (D.C. Cir. 1986)). Congress chose to include exceptions in section 6103, demonstrating that the confidentiality of returns and return information must sometimes give way to other interests. *See id.* Giving effect to those exceptions does not undermine the purpose of section 6103 as the Commissioner contends; rather, it respects the balance struck by Congress.[20] *See Food Mktg. Inst.*, 139 S. Ct. at 2366;

---

[19] We note that several cases cited by the Commissioner to support his view of the purpose of section 6103 actually support the whistleblower. *See, e.g., McSurely v. McAdams*, 502 F. Supp. 52 (D.D.C. 1980) (applying a broad exception to permit disclosure); *Shell Petroleum, Inc. v. United States*, 47 Fed. Cl. 812 (2000) (same).

[20] Congress is, of course, free to change the balance it has struck and, if it considers it advisable, establish greater protections for targets of whistleblower claims, including, for example, providing that such targets be notified before their returns or

*see also Encino Motorcars*, 138 S. Ct. at 1142 ("[T]he FLSA has over two dozen exemptions in § 213(b) alone, including the one at issue here. Those exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement. *See* [*Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718,] 1725 [(2017)] ('Legislation is, after all, the art of compromise, the limitations expressed in statutory terms often the price of passage'). We thus have no license to give the exemption anything but a fair reading.").

Second, with respect to the exception in section 6103(h)(4)(A) specifically, Congress selected a broad phrase when it drafted the provision. *See United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543 (1940) ("There is . . . no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes."). As the D.C. Circuit has observed, the mere fact that a standard is broad does not suggest that we should adopt a more limited reading. *See Azima*, 926 F.3d at 878 ("[A]lthough we agree that 'in connection with' is quite broad, we fail to see why that requires us to limit its scope."). If Congress intended to adopt a narrower standard, it could have easily used different language or provided other textual or structural clues. *See id.*; *see also Maracich*, 570 U.S. at 60. Furthermore, "[e]ven if Congress did not foresee all of the applications of the statute, that is no reason not to give the statutory text a fair reading" in the circumstances here. *Encino Motorcars*, 138 S. Ct. at 1143 (citing *Union Bank v. Wolas*, 502 U.S. 151, 158 (1991)).

Third, the flush text in section 6103(h)(4) gives the Secretary authority to prevent disclosure "if the Secretary determines that such disclosure would identify a confidential informant or seriously impair a civil or criminal tax investigation." Thus, Congress did not leave the Secretary powerless with respect to disclosures in judicial proceedings. For example, if the Secretary determines in a particular whistleblower case that disclosure of a target taxpayer's return or return information would seriously impair a tax investigation, the information could be protected from disclosure. But the Secretary has not made such a determination in this case. And the text shows that the bar Congress set for the Secretary's exercise of her discretion is high. Thus, it would not be enough for a potential disclosure simply to "impair" a tax investigation. The disclosure must "seriously" do so, indicating that Congress generally favored disclosure over nondisclosure in this context

---

return information is disclosed. But, until Congress does so, this Court must apply the rules currently reflected in the statute.

when the other requirements of the statute are satisfied. In view of the text and structure of the statute, we are unauthorized to create additional exceptions based on amorphous purpose considerations.

Fourth, we do not share the Commissioner's broad view of our holding.[21] A number of rules in addition to section 6103 limit the information available to whistleblowers in the Tax Court. For a start, to commence a case a whistleblower must appeal a WBO determination to the Court, and we must have jurisdiction to hear the case. See the discussion in Part II.D above. Under *Li v. Commissioner*, 22 F.4th at 1017, this means the IRS must have at least proceeded with an action against the target taxpayer. When the IRS does not take action—in a rejection case, for example—whistleblowers generally will not have access to returns or return information in a Tax Court proceeding.

Next, even if a whistleblower surmounts this jurisdictional hurdle, the information available in a whistleblower case generally will be limited to the administrative record the WBO develops or a properly supplemented record, because that is the record that is subject to the Court's review. *See Kasper*, 150 T.C. at 20; *see also Van Bemmelen v. Commissioner*, 155 T.C. 64, 79 (2020) (noting that in a "'record rule' whistleblower case" we decide, "as a matter of law, whether the [WBO's] action is supported by the administrative record and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). Nothing in section 6103(h)(4)(A) or our holding gives whistleblowers license to seek returns or return information that the WBO did not collect as part of its administrative process. That such documents might exist in the hands of the IRS generally or in the files of an examination team that audited a target taxpayer does not (without more) make those documents part of the administrative record and triggers no need for an evaluation under section 6103(h)(4)(A). *See* Treas. Reg. § 301.7623-3(e) (describing the contents of the administrative record in a whistleblower case).

---

[21] The Commissioner argues that interpreting section 6103(h)(4)(A) "as being broadly inclusive of any and all proceedings connected in any way whatsoever with the non-party's tax liability" would render section 6103(h)(4)(B) and (C) superfluous. But we do not so hold, and our interpretation does not create superfluity. For example, in an employer's employment tax dispute, returns or return information of the employer's employees potentially could satisfy the requirements of section 6103(h)(4)(B) or (C), *see, e.g.*, *Mescalero Apache Tribe*, 148 T.C. at 298–99, but would be unlikely to satisfy the requirements of section 6103(h)(4)(A) absent some related Government action to determine the employees' liabilities.

Contrary to the Commissioner's contention, therefore, we do not hold here that every whistleblower should receive unfettered access to the return information of every target the whistleblower names. Instead, we hold that where (1) a whistleblower submits information to the IRS identifying a target taxpayer, (2) the IRS proceeds with an action against the taxpayer and collects proceeds, (3) the WBO makes a determination regarding the whistleblower's entitlement to an award related to that action (including a determination that no award is warranted), (4) the whistleblower seeks our review of the WBO's determination, (5) our jurisdiction to perform that review depends on the IRS action that determined the target taxpayer's tax liability, and (6) the correctness of the WBO's determination (and therefore the outcome of the case before us) turns on the details of the IRS action, then the whistleblower case "arose . . . in connection with" determining the taxpayer's liability as required by section 6103(h)(4)(A). In these specific circumstances, we conclude that section 6103 does not prohibit disclosure of the taxpayer's returns and return information that the WBO has included in the administrative record supporting its determination.[22]

c.    *Regulatory Arguments*

The Commissioner concludes his analysis of section 6103(h)(4)(A) by arguing that the current whistleblower regulations are consistent with his position. Specifically, he contends that, "to the extent that existing regulations allow for limited disclosure of . . . return information to whistleblowers," these disclosures are authorized by section 6103(h)(4)(B) or (C) rather than section 6103(h)(4)(A). Resp't's Mem. 27.

We read the relevant regulations differently. For one thing, regulations under section 6103 authorize the WBO to disclose returns and return information to a whistleblower "to the extent necessary to conduct a whistleblower administrative proceeding," citing section 6103(h)(4). Treas. Reg. § 301.6103(h)(4)-1(b). The regulations provide some illustrative examples of information that may be shared, but specifically state the examples are not exclusive. *See id.*

---

[22] This conclusion is consistent with the Supreme Court's observation in *Maracich*, 570 U.S. at 64–65, that the exception under 18 U.S.C. § 2721(b)(4) "allows use of the most sensitive kind of information, including medical and disability history and Social Security numbers" "for investigation in anticipation of litigation and in the litigation itself," even though that exception did not allow disclosure "for the purpose of soliciting new business."

Additionally, regulations under section 7623 elaborate that a whistleblower who signs a confidentiality agreement may schedule an appointment with the WBO to review any information in the administrative claim file that is not protected by common law or statutory privileges.[23] Treas. Reg. § 301.7623-3(c)(4)(i)(B). Initially, the proposed regulations limited the information that could be viewed in this manner to "pertinent" information in the file, *see* Prop. Treas. Reg. § 301.7623-3(c)(5), 77 Fed. Reg. 74,798, 74,809 (Dec. 18, 2012), but in response to a comment that "the whistleblower should be able to review all non-privileged information in the administrative claim file, whether or not it is deemed pertinent," the final regulations dropped the term, s*ee* T.D. 9687, 2014-36 I.R.B. 486, 500.

Apparently then, the regulations would have authorized the Commissioner to share the administrative claim file underlying this case, including nonpertinent portions of the file, with the whistleblower during the whistleblower administrative proceeding associated with the whistleblower's claims. Disclosures under section 6103(h)(4)(B) and (C) are limited by statute to materials "directly related to the resolution of an issue in the proceeding," but disclosures under section 6103(h)(4)(A) are not. This strongly indicates that the regulations rely on section 6103(h)(4)(A) to authorize disclosures in whistleblower administrative proceedings.[24] And we see no basis in the statute for concluding that

---

[23] The regulations define the "administrative claim file" broadly to include a list of enumerated materials, *see* Treas. Reg. § 301.7623-3(e)(2)(i)–(viii), as well as "[a]ll other information considered by the official making the award determination," *id.* subdiv. (ix).

[24] We note that the regulations predate the 2019 enactment of section 6103(k)(13), *see* Taxpayer First Act of 2019, Pub. L. No. 116-25, § 1405(a), 133 Stat. 981, 997–98 (2019), and therefore that section 6103(k)(13) did not provide the authorization for their adoption. Section 6103(k)(13) applies to proceedings before the Secretary that precede a whistleblower's appeal to our Court. *See* I.R.C. § 6103(k)(13) (permitting the disclosure of return information to a whistleblower related to the investigation of a target taxpayer in certain circumstances, requiring the Secretary to provide status updates to whistleblowers at certain times, and, upon a whistleblower's request, requiring the Secretary to provide updates on the status of the investigation and disclose the reasons for any award determination under section 7623(b)). As the Commissioner observed in briefing, section 6103(k)(13) "permits disclosures to be made 'to any individual providing information relating to any purpose described in paragraph (1) or (2)' [of section 7623(a)]. It does not authorize disclosures to the Court." Resp't's Mot. To Modify Order 9 (Doc. 114). The Commissioner is right that section 6103(k)(13) says nothing about disclosures to the Court. That topic is covered by section 6103(h)(4). Consistent with this understanding, when Congress adopted section 6103(k)(13), it did not restrict the scope of section 6103(h)(4), even though the

section 6103(h)(4)(A) authorizes broader disclosure in administrative proceedings than in judicial proceedings. In other words, if the regulations would have authorized the Commissioner to share the administrative claim file with the whistleblower during the whistleblower administrative proceeding, we see no basis in section 6103(h) for the Commissioner to provide less information in a subsequent judicial proceeding. Thus, the regulations reinforce our conclusion that section 6103(h)(4)(A) authorizes disclosure of the administrative record in this case.

### d. *Final Considerations*

From a broader perspective, the arguments the Commissioner offers in support of his position reflect an approach that "is a relic from a 'bygone era of statutory construction.'" *Food Mktg. Inst.*, 139 S. Ct. at 2364. The Commissioner spends little time with the statutory text or its ordinary meaning, pivoting almost immediately to legislative history and purported general policies underlying section 6103(a) (which, as we have described, offer him no help). He provides no analysis of the structure or the exceptions to section 6103(a), which are legion and of course were enacted by Congress. *Cf. Maracich*, 570 U.S. at 52–70 (relying on the structure of the statute and all the relevant provisions to determine the meaning of the text at issue). Moreover, the holdings of several of the cases the Commissioner cites in support of his policy points turn out to support the whistleblower's position. And, as described in the preceding section, the same can be said of the regulations. Therefore, while the Commissioner's concern regarding his responsibilities under section 6103 is laudable, we cannot agree with his interpretation of the statute.

Our conclusion does not leave taxpayer information contained in the administrative record the WBO creates without protection. For example, Rule 27 provides guidance for redacted filings and states that, for good cause, the Court may require further redactions or issue a protective order. *See* Rule 27(a), (d). And Rule 103(a) states that, on a party's motion and for good cause shown, "the Court may make any order which justice requires to protect a party or other person from

---

same section of the Taxpayer First Act that added section 6103(k)(13) to the Code also amended section 6103(k)(6) to exclude from its reach disclosures covered by the newly added section 6103(k)(13). The contrast in Congress's approach with respect to section 6103(k)(6)—express amendment—and Congress's approach with respect to section 6103(h)(4)—absolute silence—confirms that the adoption of section 6103(k)(13) did not affect the authority under section 6103(h)(4).

annoyance, embarrassment, oppression, or undue burden or expense." The Commissioner remains free to pursue redaction of the administrative record pursuant to these rules. But he cannot maintain that section 6103 prohibits him from complying with the Court's orders.

Finally, our further review of section 6103(h)(4)(A) as applicable to this case leads us to conclude that section 6103 considerations do not warrant an in camera review of the redacted materials. Congress has already made a determination with respect to them as far as section 6103 is concerned. They may be disclosed. Unless the Secretary determines that providing the unredacted information "would identify a confidential informant or seriously impair a civil or criminal tax investigation," I.R.C. § 6103(h)(4) (flush text), the Commissioner may not resist disclosure by appealing to section 6103(a). The Commissioner remains free of course to propose more targeted redactions under Rule 27(a) and (d) and Rule 103(a), and we will allow him time to do so if he considers that appropriate.

IV. *Conclusion*

To summarize, the Commissioner's interpretation of section 6103(h)(4)(A) cannot stand in the face of the broadly worded statutory exception, the structure of the statute, and the statute's other provisions. If Congress had meant to limit the exception as the Commissioner suggests, it could have used more exacting language and given different textual and structural clues. The facts of this case fall well within the bounds of the exception Congress provided, and we must therefore decline the Commissioner's invitation to impose stricter requirements.

To reflect the foregoing,

*An appropriate order will be issued.*

Reviewed by the Court.

KERRIGAN, FOLEY, GALE, GUSTAFSON, MORRISON, BUCH, NEGA, PUGH, ASHFORD, URDA, COPELAND, JONES, GREAVES, MARSHALL, and WEILER, *JJ.*, agree with this opinion of the Court.

PARIS, *J.*, did not participate in the consideration of this opinion.